Mary Jean PREJEAN, et al.,
Plaintiffs-Appellants,

v.

SONATRACH, INC., et al.,
Defendants-Appellees.

No. 79–3356.

United States Court of Appeals,
Fifth Circuit.

Unit A

Aug. 13, 1981.

Baron & Cowley, Frederick M. Baron, Russell Wills Budd, Dallas, Tex., for plaintiffs-appellants.

Vinson & Elkins, Louis E. McCarter, David H. Brown, Houston, Tex., for Sonatrach, Inc.

Richard H. Caldwell, Gerald L. Bracht, Houston, Tex., for Beech Aircraft Corp.

George N. Tompkins, Jr., Condon & Forsyth, Thomas J. Whalen and Lawrence Mentz, New York City, Alan S. Dale, Houston, Tex., for Air Algerie.

Helene Allan Alt, Houston, Tex., for Continental Ins. Co.

Before WISDOM, RUBIN and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

The widows in this diversity suit for wrongful death appeal from the district court order dismissing all three defendants for lack of personal jurisdiction. This Court affirms in part and in part reverses and remands the dismissal.

The two decedents [1] were employed by a Dallas engineering firm that allegedly entered into a contract with defendant Sonatrach, Inc., the Algerian national oil company, to provide technical assistance. While allegedly performing duties in Algeria pursuant to this contract, an airplane manufactured by defendant Beech Aircraft Corporation (Beech), owned by defendant Air Algerie, and allegedly chartered by Sonatrach, crashed on October 16, 1975, because of unknown causes, tragically killing the engineers.

■ The widows then filed this wrongful death suit in federal district court on October 12, 1977. Service of process was made under the Texas Long Arm Statute, Tex. Rev.Civ.Stat.Ann. art. 2031b, on the three defendants in November 1977.[2] All three defendants promptly contested the existence of personal jurisdiction. After service was made but before dismissal of the suit Sonatrach became licensed to do business in Texas. After some jurisdictional discovery, the district court first dismissed Beech, then Air Algerie, and finally Sonatrach.

The central issue in this case is the meaning and application of the Texas Long Arm Statute. The first question posed to this Court is whether or not Article 2031b authorizes the broadest possible reach four-teenth amendment due process permits. Plaintiffs argue that the statute is coextensive with the limits due process places on state long arm jurisdiction and that all three defendants in one way or another have constitutionally sufficient contacts with Texas. Defendants counter that any and all of their respective contacts with Texas are unrelated to plaintiffs' suit and that the statute requires a nexus between the cause of action and the defendants' contacts, regardless of what due process permits.

■ *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny set forth the due process confines on a state's ability to subject a nonresident defendant to suit in its courts. Constitutionally permissible amenability to process depends upon the quality and nature of the activity within the state such that it is fair and reasonable for the nonresident to come into that forum and defend the action. Beyond this limit state service of process statutes may not reach. But due process does not compel the states to assert jurisdiction this far. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 440, 72 S.Ct. 413, 415, 96 L.Ed. 485 (1952).

■ Because jurisdiction is achieved by service under the long arm statute, and because due process is a limit on the reach of the statute, the first—and threshold—question is whether the statutory requirements have been met. Only if the statute authorizes the exercise of in personam jurisdiction does the court reach the question of whether the assertion of that jurisdiction exceeds constitutional bounds.[3]

---

1. John Prejean was survived by his wife, Mary Prejean, and two minor children. The plaintiffs' complaint states that Mrs. Prejean and the children are residents of Dallas, Texas.

Alphonse Mouton was survived by his wife, Joanna Mouton, and one minor child. The complaint states that Mrs. Mouton and the child are residents of Houma, Louisiana, but at the time of the fatal crash were residents of Paris, France.

2. By virtue of Fed.R.Civ.Pro. 4(d)(7) & (e), a federal court in a diversity action enjoys jurisdiction over a nonresident defendant to the extent permitted by the long arm statute of the forum state. *Gold Kist, Inc. v. Baskin-Robbins Ice Cream Co.*, 623 F.2d 375, 377 (5th Cir.1980); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 489 (5th Cir.1974); *Arrowsmith v. United Press International*, 320 F.2d 219, 222–25 (2nd Cir.1963) (en banc) (Friendly, J.).

3. *See Oswalt v. Scripto, Inc.*, 616 F.2d 191, 196

■ It is true that due process allows the state to assert jurisdiction over a nonresident defendant that carries on continuous and systematic activities in the state unrelated to the cause of action. *Perkins,* 342 U.S. at 445–47, 72 S.Ct. at 418–19.[4] The Texas statute, however, expressly limits personal jurisdiction to causes of action arising out of activities or business done within the state. Section 2 restricts amenability to "any action ... arising out of [business engaged in within the state.]" Section 3 confines amenability to "any action, suit or proceedings arising out of such business done in this State."[5] Section 4 defines doing business as including but not limited to the entering into a contract by mail or otherwise with a resident of Texas

to be performed in whole or in part by either party in Texas, or the committing of any tort in whole or in part in Texas.[6] The statute thus unambiguously reaches only suits arising out of contacts with Texas.

■ Plaintiffs rely on two cases to support their theory that, despite its literal language, Article 2031b encompasses causes of action unrelated to the defendant's contacts with the forum. The first is *U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760 (Tex.1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978). The Texas Supreme Court broadly stated that Article 2031b reaches the constitutional limits of due process. It is evident from a reading of that case, however, that this language directly addressed only the mean-

---

(5th Cir.1980); *Walker v. Newgent,* 583 F.2d 163, 166 (5th Cir.1978); *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 489, 492 (5th Cir.1974); *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228, 1232 (5th Cir.1973); *Coulter v. Sears, Roebuck & Co.,* 426 F.2d 1315, 1316 (5th Cir.1970); *Atwood Hatcheries v. Heisdorf & Nelson Farms,* 357 F.2d 847, 852 (5th Cir.1966); *Pizza Inn, Inc. v. Lumar,* 513 S.W.2d 251, 253 (Tex.Civ.App.—Eastland 1974, writ ref'd n.r.e.). *But see Eyerly Aircraft Co. v. Killian,* 414 F.2d 591, 593 (5th Cir.1969) (due process considered before question of statutory requirements).

The reach the statute sanctions is a question of state law, and federal courts are required to give the statute the same construction as would the *state's highest court. Jetco,* 473 F.2d at 1232; *Walker v. Savell,* 335 F.2d 536, 540 (5th Cir.1964). The reach that due process permits is a question of federal law.

**4.** In fact, four paradigms can be drawn from the case law with regard to the reach due process permits. The first is that of *International Shoe* itself: the resident plaintiff's cause of action arises out of the nonresident defendant's substantial activity in the forum. The second is that of *Perkins:* the cause of action is unrelated to the substantial activity in the forum. In the third, the forum contacts are casual, isolated, occasional, single, or slight, and the cause of action arises out of that activity. Depending on the nature and quality of these contacts and the relative inconvenience in requiring one of the parties to litigate in another state, personal jurisdiction may be asserted. *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Finally, when the cause of action is unrelated to the nonresident's slight activity within the forum, then the constitutionality of jurisdiction is least likely, though the nature and quality of

the slight contacts and the relative fairness to the parties could still produce a rare case in which jurisdiction would be permissible. *See Kulko v. Superior Court of California,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (treating absence of connection as one of many factors); *Hanson v. Denckla,* 357 U.S. 235, 251–52, 253–54, 78 S.Ct. 1228, 1238–39, 1240, 2 L.Ed.2d 1283 (1958). *See also Wilkerson v. Fortuna Corp.,* 554 F.2d 745, 749–50 (5th Cir.), *cert. denied,* 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977) (due process requires only minimum connection between state and nonresident defendant when plaintiff's cause of action is unrelated to defendant's activities in the forum). In other words, the connection, if any, between the suit and the contacts is merely another factor in determining whether jurisdiction is allowable.

**5.** In contrast is Tex.Bus.Corp.Act Ann. art. 8.10. This provides for service on foreign corporations "transacting" business within the state, but does not require the cause of action arise out of the activity within the state. Article 8.10, however, *only provides for service in* those cases when the state may require a foreign corporation to become licensed to do business. *See id.* art. 8.01 (admission of foreign corporation).

**6.** The single-act contract and tort examples of "doing business" are patterned after the third paradigm in note 4 *supra.* Section 4 was amended in 1979 to include within "doing business" the act of recruiting Texas residents, directly or through an intermediary located in Texas, for employment inside or outside of Texas. Tex.Rev.Civ.Stat.Ann. art. 2031b, § 4 (Supp.1980).

ing of "doing business" in the context of whether it is coextensive with the constitutional confines of due process.[7] The cause of action in that case not only arose out of the business done in Texas, the Texas Supreme Court expressly noted that connection in its determination of whether jurisdiction existed. 553 S.W.2d at 760.[8] There-

**7.** As the Texas Supreme Court stated, "Such a construction is desirable in that it allows the courts to focus on the constitutional limitations of due process rather than to engage in technical and abstruse attempts to consistently define 'doing business.'" *Id.* at 762.

Plaintiffs also rely on cases that state that the Texas Legislature intended Article 2031b comprehend every situation permitted by due process. *See, e. g., Product Promotions,* 495 F.2d at 491, 498 n. 27; *Jetco,* 473 F.2d at 1234; *Eyerly Aircraft,* 414 F.2d at 599; *Atwood Hatcheries,* 357 F.2d at 852. These cases, however, proclaimed this maximum statutory reach in the context of what were sufficient contacts, not whether the statute required a nexus. *See Product Promotions,* 495 F.2d at 491–92 (statement that many, if not most, jurisdictional challenges will turn on constitutional considerations, implying that some challenges will turn on statutory considerations). Some even make the point expressly in the context of what constitutes "doing business" under § 4, just as the Texas Supreme Court did in *U-Anchor. See, e. g., Atwood Hatcheries,* 357 F.2d at 852. Even if the Legislature intended that the statute in its entirety reach constitutional bounds, that cannot serve to change the unambiguous language of the statute; the Texas Legislature must expressly do so by amendment. There is, moreover, no legislative history on the intended scope of the statute. Comment, *The Texas Long-Arm Statute, Article 2031b: A New Process is Due,* 30 S.W.L.J. 747, 754 (1976).

The Texas Legislature enacted Article 2031b in 1959, one year after the *Hanson* decision. It is clear from the face of the statute that it was drafted in light of *Hanson* and *McGee.* In *McGee* jurisdiction was upheld and the cause of action arose out of the slight contacts with the forum; in *Hanson* jurisdiction was denied and the cause of action was unrelated to the slight contacts. Yet the statute is narrower than due process in two respects. First, even in cases of slight contacts and unrelated causes of action, jurisdiction might be constitutional since it is the nature and quality and not the mere number of contacts that is controlling, though such cases are admittedly rare. *See* note 4 *supra.* More importantly, due process does not require the cause of action arise out of forum contacts if the unrelated contacts are substantial and continuous. *Id.* The better view concerning the intent of the Texas Legislature is that the statute was designed to best *approximate* due process limits within the shortcomings of drafting specific criteria that provide guidelines to litigants. *Cf.* Comment, *supra,* at 770–71 (specific criteria, unlike comprehensive concept of jurisdiction, may provide litigation guidelines but are less likely to include full extent due process permits).

Plaintiffs also argue that the language in § 4—"for the purpose of this Act, *and without including other acts that may constitute doing business*"—encompasses causes of action arising out of contacts unrelated to the forum. That language merely indicates that the contract and tort examples are not an exclusive listing of what constitutes "doing business." *See Reul v. Sahara Hotel,* 372 F.Supp. 995, 998 (S.D.Tex.1974). It says nothing about whether a defendant is amenable on a cause of action that does not arise out of those "other acts that may constitute doing business."

**8.** Some Texas cases clearly understand that the nexus requirement has a statutory source. *See Diversified Resources Corp. v. Geodynamics Oil & Gas, Inc.,* 558 S.W.2d 97 (Tex.Civ.App.— Corpus Christi 1977, writ ref'd n.r.e.) (discussing nexus requirement separately from due process analysis, and discussing *U-Anchor* only in due process context). Other Texas cases, however, do not clearly indicate whether the source of the nexus requirement is statutory or constitutional. *See, e. g., U-Anchor,* 553 S.W.2d at 762–63; *Computer Synergy Corp. v. Business Systems Products, Inc.,* 582 S.W.2d 573, 576 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ).

This lack of clarity stems in part from *O'Brien v. Lanpar,* 399 S.W.2d 340 (Tex.1966). The Texas Supreme Court in *O'Brien* was construing the Illinois Long Arm Statute, which, like the Texas statute, requires a nexus between the contacts and the cause of action. The Supreme Court adopted a three-part test: (1) the nonresident defendant must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) jurisdiction cannot offend due process, given the quality nature and extent of the activity in the forum, the relative convenience of the parties, the benefits and protection of the forum's laws afforded to the parties, and the basic equities of the situation. This test was taken from *Tyee Construction Co. v. Dulien Steel Products, Inc.,* 62 Wash.2d 106, 381 P.2d 245, 251 (Wash.1963).

Although the Washington Supreme Court announced the test as a synthesis of the constitutional tests and the requirements of the Washington statute, which also required the cause of action arise out of the contacts with the forum, the Texas Supreme Court seemed to adopt it as the test for due process. This, at least, is how some decisions viewed *O'Brien. See, e. g., Ey-*

fore, while the statute encompasses all non-fortuitous contact with the forum such that due process would allow amenability to suit, in addition the cause of action must arise out of those minimum contacts.[9]

■ The other case relied on by plaintiffs is *Navarro v. Sedco, Inc.*, 449 F.Supp. 1355 (S.D.Tex.1978). This district court opinion seized on the broad language of *U-Anchor* concerning the reach of the statute as authority for the proposition that the cause of action need not arise out of defendant's business in Texas. As the earlier discussion makes plain, however, Article 2031b demands what due process merely takes into account: a nexus between the contacts with the forum and the cause of action of such a kind as to make the cause of action arise from those contacts.[10] *Navarro* thus took the *U-Anchor* language out of context. This Court expressly disapproves *Navarro's* language refusing to require a nexus, and henceforth it should not be followed. Until such time as the Texas Legislature should see fit to eliminate the nexus requirement,[11] service of process under Article 2031b cannot be made validly on a nonresident defendant whose contacts with Texas have no connection with the plaintiff's cause of action.[12]

Having established the contours of Article 2031b, the next inquiry is whether or not defendants here were in fact amenable under the statute at the time service of process was made. Plaintiffs allege that the negligence of all three defendants caused

---

*erly Aircraft*, 414 F.2d at 599 n. 12; *Pizza Inn, Inc. v. Lumar*, 513 S.W.2d 251, 254 (Tex.Civ.App.—Eastland 1974, writ ref'd n.r.e.).

In any event, the Texas lower court decisions after *U-Anchor* have continued to require a nexus between the cause of action and the contacts with Texas. *Wright Waterproofing Co. v. Applied Polymers of America*, 602 S.W.2d 67 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.); *Sherman Gin Co. v. Planter's Gin Co.*, 599 S.W.2d 348 (Tex.Civ.App.—Texarkana 1980, no writ); *Rosemont Enterprises, Inc. v. Lummis*, 596 S.W.2d 916 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ); *Motiograph, Inc. v. Check-Out Systems, Inc.*, 573 S.W.2d 606 (Tex.Civ.App.—Eastland 1978, writ ref'd); *Michigan General Corp. v. Mod-U-Kraf Homes, Inc.*, 582 S.W.2d 594 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.). The confusion over the source of that requirement—constitutional or statutory—cannot dictate a different result. Although due process does not require a nexus, this Court is confident that the Texas Supreme Court would require it solely on the basis of the statute.

9. The combination of the statutory nexus requirement and *U-Anchor's* definition of "doing business" eliminate any possible overbreadth of the statute. The nexus requirement eliminates the occurrence of the second and fourth paradigms in note 4 *supra*. The definition of "doing business" as equivalent to *International Shoe's* "minimum contacts" ensures that, in the first and third paradigms of note 4 *supra*, the contacts that satisfy the statute are also sufficient for purposes of due process. By being narrower in one respect and congruent in another with due process limits, the Texas statute can never encompass a situation in which the exercise of personal jurisdiction is unconstitutional.

10. Some Fifth Circuit cases have expressly required a nexus. *Wilkerson v. Fortuna Corp.*, 554 F.2d 745, 747–49 (5th Cir.), *cert. denied*, 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977); *Product Promotions*, 495 F.2d at 492 (held nexus requirement met in discussion of statutory considerations). *Accord, Eyerly*, 414 F.2d at 599 n. 12, 600–01. Other cases either did not need to reach the issue, *e. g. Walker*, 583 F.2d 163, or did not discuss it because on the facts of the case the requirement was obviously met. *e. g., Oswalt*, 616 F.2d 191; *Great Western United Corp. v. Kidwell*, 577 F.2d 1256 (5th Cir.1978), *rev'd on other grounds sub nom. Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979); *Black v. Acme Markets, Inc.*, 564 F.2d 681 (5th Cir.1977); *Jetco*, 473 F.2d 1228; *Coulter*, 426 F.2d 1315; *Atwood Hatcheries*, 357 F.2d at 847.

11. *See* Comment, *supra* note 7, at 770–73 (proposing that Texas adopt long arm statute providing comprehensive due process concept of jurisdiction rather than specific criteria so as to always include the full reach permitted by due process; proposed statute would not require but only take into account any relation between the claim for relief and the contacts with Texas).

12. This is not to say that the long arm statute is not to be given its broadest possible construction. This Court is only stating the obvious: the statute should be given the broadest possible construction subject only to the statute's own limitations and those of due process. *See Clark Advertising Agency, Inc. v. Tice*, 331 F.Supp. 1058, 1059 (N.D.Tex.1971), *aff'd on other grounds*, 490 F.2d 834 (5th Cir.1974).

the fatal crash and that Beech is also strictly liable. Under section 4 of Article 2031b, a defendant is deemed to be doing business through the commission of any tort in whole or in part in Texas. It is clear that this cause of action arises out of the alleged tort; the question is whether any part of the alleged tort occurred in Texas.

The statute specifies committing a "tort" in the state, rather than committing merely a tortious act or omission in the state. The plaintiffs argue that since "tort" includes tortious injury, part of the tort occurs at the place of the legal injury, not just the place of the wrongful act or omission. The wrongful death action is a statutory cause of action for the intangible injury to the decedent's survivors of lost future pecuniary benefits, care, maintenance, support, services, advice, and counsel. *See, e. g., Dover Corp. v. Perez*, 587 S.W.2d 761, 768, *opinion supplemented on other grounds*, 591 S.W.2d 547 (Tex.Civ. App.—Corpus Christi 1979, writ ref'd n.r.e.). The tortious injury, however, is the death of the decedent, not the economic consequences that flow from his death. *Cf.* Restatement of Conflicts, Second, §§ 145 and 146. Within the meaning of the statute, therefore, the tort did not occur in the State of Texas. Consequently, to serve process pursuant to Article 2031b, the putative defendant would have to be "doing business" in Texas, and this wrongful death action would have to have arisen from that business.

Even if the economic and the intangible injuries to the plaintiffs constituted a Texas nexus or the statute was otherwise satisfied, however, that would not alone suffice, for the assertion of jurisdiction must still pass constitutional muster.[13] The essence of the due process cases such as *International Shoe* and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), is that the contact with the forum must not be fortuitous. When a defendant purposefully avails himself of the benefits and protection of the forum's laws—by engaging in activity in the state or engaging in activity outside the state that has reasonably foreseeable consequences in the state—maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice.[14] Considerations such as the quality, nature, and extent of the activity in the forum, the foreseeability of consequences within the forum from activities outside it, and the relationship between the cause of action and the contacts, relate to whether it can be said that the defendant's actions constitute "purposeful availment.[15] In other words, a defendant's activities in relation to the

---

**13.** *See also Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980) (ownership of property in the state, including intangible property like a debt which has legal situs wherever debtor is found, is a contact between the defendant and the forum, though jurisdiction is lacking unless there are sufficient contacts to satisfy due process).

**14.** The due process test has been variously stated. In addition to the due process elements of the *O'Brien* test, see note 8 *supra*, there is the more general test in *Product Promotions*: there muse be some minimum contact that results from an affirmative act of the defendant, and it must be fair and reasonable to require the defendant to come into the state to defend the action. 495 F.2d at 494.

**15.** Purposeful availment, while a necessary condition, is not always a sufficient condition to finding the exercise of personal jurisdiction constitutional. There are two other factors. *Product Promotions*, 495 F.2d at 497–98; *Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir. 1965) (Blackmun, J.). The first is any special interest that the state has in exercising jurisdiction. *See, e. g., McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647–48, 70 S.Ct. 927, 929–30, 94 L.Ed. 1154 (1950); *Hearne v. Dow-Badische Chem. Co.*, 224 F.Supp. 90, 99 (S.D.Tex.1963). This is similar to the most significant relationship test of the Second Restatement, which·expressly includes in the determination of the proper choice of tort law not only the location of the tortious act and tortious injury, but also the relevant policies of the forum and the residence of the parties. *See* Restatement (Second) of Conflict of Laws §§ 6 & 145. Thus, in *McGee* and *Travelers* the special interest was in assuring an effective means of redress for residents when insurers refuse to pay claims. Here, as in the conflicts of law field, the interest is in assuring compensation to resident tort victims. *See Product Promotions*, 495 F.2d at 498 n.27 (general interest in providing residents with

state indicate he is on notice that he could be haled into its courts.[16]

Whether there is purposeful availment when an out of state act causes effects within the state depends upon the interplay of three factors: (1) the existence and degree of purposefulness with which the effect in that forum was created; (2) whether the defendant has other substantial contacts with the forum unrelated to the suit; and (3) the substantiality of the effect itself. In all cases the effect must to some degree be purposefully created.[17] When that factor is present and yet not very strong, the presence of one or both of the other two factors becomes crucial. If the creation of the effect is at least purposeful and the effect substantial, no other contacts are needed. *See, e. g., Oswalt,* 616 F.2d at 201; *Kidwell,* 577 F.2d at 1267–68; *Coulter,* 426 F.2d at 1318. On the other hand, if the effect of minimally purposeful creation is not substantial, other substantial contacts must exist. *See generally Kulko v. Superior Court of California,* 436 U.S. 84, 94–98, 98 S.Ct. 1690, 1698–1700, 56 L.Ed.2d 132 (1978). In other words, the stronger the form of the purposefulness, the less substantial must be either the effect or the other contacts.[18]

With respect to Air Algerie, the intangible tortious injury to the Texas

---

forum in which to seek recovery against non-residents). The forum's interest can serve to enhance the contacts with the forum to a quality that justifies the assertion of jurisdiction. Unlike the purposeful availment element of the due process limit, however, this element is never a sufficient condition by itself. Its presence can only lend weight to the sufficiency of the purposeful contacts.

Finally, there is the convenience of the parties in litigating in another state. *International Shoe,* 326 U.S. at 317, 66 S.Ct. at 158; *Product Promotions,* 495 F.2d at 498; *Hearne,* 224 F.Supp. at 99. The relative convenience of the parties is also an enhancing factor but not a sufficient condition by itself. *Blount v. Peerless Chemicals, (P.R.), Inc.,* 316 F.2d 695, 697–98 (2d Cir.), *cert. denied sub nom. Colbert v. Peerless Chemicals (P.R.), Inc.,* 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62 (1963). The factors for application of the doctrine of forum non conveniens are also relevant here. *Product Promotions,* 495 F.2d at 498 n.29.

16. *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). This notice is not actual but instead reasonable notice—by a defendant's deliberate rather than fortuitous contacts with the forum, he should reasonably anticipate, and not be surprised at, being subject to suit there. *See id.; Product Promotions,* 495 F.2d at 496. Or as stated in *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1239, there must be more than unilateral activity by a resident plaintiff claiming some relationship with a nonresident defendant.

17. *See, e. g., Kulko v. Superior Court of California,* 436 U.S. 84, 94, 98 S.Ct. 1690, 1698, 56 L.Ed.2d 132 (1978) (New York father's acquiescence in daughter's desire to live with mother in California was not purposeful creation of extraterritorial effects). This point is made clearest by the "stream of commerce" cases—the defective product finding its way into the forum state and causing injury there. These cases distinguish between purposeful introduction of products into commerce generally or a national distribution system, on the one hand, and patterning the distribution scheme to avoid having the products reach a particular jurisdiction, on the other. *See, e. g., World-Wide Volkswagen,* 100 S.Ct. at 567; *Oswalt,* 616 F.2d at 199–200. When some products in the latter case nonetheless reach that state through unexpected or fortuitous circumstances, jurisdiction on that contact is impermissible. *See World-Wide Volkswagen,* 100 S.Ct. at 567; C. Wright & A. Miller, Federal Practice and Procedure § 1069, at 261 (1969).

18. Purposeful creation is strongest when the defendant intended the impact to be felt in the forum. *See, e. g., Kidwell,* 577 F.2d at 1267–68 (Idaho officials blocking Texas corporation's tender offer); *Black v. Acme Markets,* 564 F.2d at 685 (conspiracy to depress prices); *Wilkerson,* 554 F.2d at 747 (refusal to deal). It is also present, as in the "stream of commerce" cases, when the defendant can reasonably expect the effect to localize itself in the forum. The expectation is stronger when the defendant establishes or relies on a marketing distribution system that serves the forum than when the defendant merely introduces his products into the general currents of commerce. *See Oswalt,* 616 F.2d at 201 n.14.

The interplay of all three factors is best illustrated by *Jetco.* The purposeful creation was the release of a product testing report into interstate commerce. The other unrelated contacts with Texas were not very substantial. The report, however, injured the plaintiff's business reputation, creating the substantial effect of giving the plaintiff's competitors' a significant edge in the market. Jurisdiction was upheld.

plaintiffs is the only contact this defendant is alleged to have with Texas. This contact did not satisfy the statutory nexus requirement. Even if it did, however, assertion of jurisdiction solely on the basis of this single, fortuitous contact with Texas would violate the strictures of due process. The economic effects from the alleged tortious conduct were not purposefully introduced into Texas, but were only fortuitous impacts on the survivors, wherever they were located, from the wrongful acts against the decedents. Without the necessary factor of purposeful creation of the effects, the assertion of in personam jurisdiction is unconstitutional. In other words, the contact supplying the statutory nexus is alone not enough for this Court to say that a defendant in Air Algerie's position would not be surprised when haled into a court in Texas rather than somewhere else.

■■■ With respect to Beech, although its substantial activities in Texas satisfy the due process constraints on this assertion of jurisdiction and it, therefore, is "doing business" in Texas,[19] *U-Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760 (Tex.1977), *cert. denied*, 434 U.S 1063, 98 S.Ct. 1235, 55

L.Ed.2d 763 (1978), these activities have not been shown to have the slightest causal relationship with the decedent's wrongful death.[20]

To summarize, because the tort did not occur in Texas and the cause of action did not arise from Beech's activities there, the requirements of the Texas statute were not met and the district court was correct to dismiss the complaint against Beech.

■■■ As for Sonatrach, from the record as presently developed, it appears that there were no contacts with Texas prior to service of process other than the intangible tortious injury to the Texas plaintiffs and the alleged contract with decedents' employer. Sonatrach disputes not only the existence of the contract, but also the chartering of the plane, which would sever Sonatrach from the tortious injury contact with Texas. Further jurisdictional discovery is required with respect to the existence of the contract, the charter, and other matters before this Court can pass on the constitutionality and statutory validity of asserting jurisdiction over Sonatrach on the basis of these contacts.[21]

19. For example, Beech entered into an $11.1 million subcontract in January 1978 with Bell Helicopter of Fort Worth, Texas, for the production of airframe assemblies, and had produced these for Bell Helicopter continuously since 1967 under contracts exceeding $72 million. Beech also has two employees residing in Texas, one a liaison representative to Bell Helicopter, the other a regional aerospace sales representative. Beech does some national advertising of its products, which necessarily includes Texas. Beech also wholly owns Beech Holdings, Inc., which in turn wholly owns Houston Beechcraft, Inc., a Texas corporation with its principal place of business in Houston, Texas. This latter corporation distributes, sells, and services aircraft manufactured by Beech and other aircraft manufacturers.

20. The only contact with Texas from which the cause of action arises is clearly the Texas plaintiffs' injury since the plane was designed and manufactured in Kansas, sold to a Swiss corporation, and delivered to an Algerian concern before crashing in Algeria.

21. Sonatrach argues that even if it had entered into the contract with decedents' employer, the statutory nexus requirement is not met because the plaintiffs' action sounds in tort while Sona-

trach's contact with Texas would be contractual. Put simply, Sonatrach takes the view that a tort suit cannot arise from a contractual contact, and presumably vice versa. Sonatrach is not alone in this view. *See Reich v. Signal Oil & Gas Co.*, 409 F.Supp. 846 (S.D.Tex.1974), *aff'd mem.*, 530 F.2d 974 (5th Cir. 1976). This simplistic view, however, is much too narrow an interpretation of a statute that is to be given the broadest possible construction. *See* note 12 *supra*. Logically, there is no reason why a tort cannot grow out of a contractual contact. In a case like this, the contractual contact is a "but for" causative factor for the tort since it brought the parties within tortious "striking distance" of each other. While the relationship between a tort suit and contractual contact is certainly more tenuous than when a tort suit arises from a tort contact, that only goes to whether the contact is by itself sufficient for due process, not whether the suit arises from the contact. In any event, this tort suit also arises from the intangible tortious injury in Texas to the Texas plaintiffs, assuming Sonatrach chartered the plane. Therefore, discovery would still be needed before this Court could say that factually there is a nexus between this suit and either the tort or contract contact, and whether in such a case due process would be satisfied.

For the foregoing reasons, the dismissal by the district court as to Sonatrach is reversed and the case is remanded for further proceedings consistent with this opinion. As to Air Algerie and Beech, the dismissal is affirmed, without prejudice to the reinstitution of suit in a court of competent jurisdiction.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

---

**Editor's Note:** The opinion of the United States Court of Appeals, Sixth Circuit in *Owen v. Commissioner of Internal Revenue* published in the advance sheets at this citation 652 F.2d 1271–1284, was withdrawn from bound volume because rehearing was granted.

---

Sonatrach is now authorized to do business within the State of Texas. By virtue of the theory of consent to jurisdiction implicit in Tex. Bus.Corp. Act Ann. art. 8.10, a foreign corporation consents to amenability to jurisdiction for purposes of all lawsuits brought within the state, whether or not the cause of action relates to activities within the state. *Goldman v. Pre-Fab Transit Co.*, 520 S.W.2d 597 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ). Sonatrach, however, did not become licensed to do business until after service of process was made under Article 2031b. Since personal jurisdiction must exist at the time service is made, subsequent licensing to do business cannot retroactively validate otherwise invalid service of process. Subsequent amenability to suit during the pendency of the litigation, however, apparently gives plaintiffs the option of instituting a new suit and obtaining a new service of process. This would, however, perhaps destroy diversity, *see* 28 U.S.C. § 1332, a defect that a federal trial or appellate court would be obliged to notice *sua sponte*.