CONNECTICUT NATIONAL BANK *vs.* HOOVER TREATED
WOOD PRODUCTS, INC.

No. 93-P-344.

Suffolk. June 6, 1994. - August 31, 1994.

Present: ARMSTRONG, DREBEN, & GILLERMAN, JJ.

*Jurisdiction,* Long-arm statute, Foreign corporation. *Due Process of Law,*
Jurisdiction over nonresident.

A Delaware corporation with a principal place of business in Georgia,
which shipped wood products to retailers and distributors in Massachu-
setts, and which in a five-month period in 1990 engaged in more than
thirty commercial transactions in the Commonwealth with an aggre-
gate commercial value of over $375,000, transacted business in the
Commonwealth within the meaning of the long-arm statute, G. L. c.
223A, § 3 [233-234]; where a Massachusetts bank, not a party to any
transactions with the corporation, would not have suffered a loss but for
the ongoing business conducted by the corporation and its Massachu-
setts customers, the exercise of jurisdiction over the corporation in Mas-
sachusetts courts would be proper [234-236], and requiring the corpo-
ration to defend itself in Massachusetts courts would not offend due
process [236-237].

CIVIL ACTION commenced in the Superior Court Depart-
ment on July 26, 1991.

The case was heard by *John C. Cratsley,* J., on a motion
to dismiss.

*Lawrence Rizman* for the plaintiff.

*Jeffrey N. Shribman* for the defendant.

GILLERMAN, J. We must decide whether the Superior
Court may properly exercise jurisdiction over the defendant
under the Massachusetts long-arm statute, G. L. c. 223A,
§ 3. Confining the analysis to the plaintiff's assertion that its
claim arose out of the business transacted by the defendant
with P.F. O'Connor, Inc. (O'Connor), see *Good Hope Indus.,
Inc.* v. *Ryder Scott Co.,* 378 Mass. 1, 10 n.17 (1979), we

conclude that the Superior Court has jurisdiction of this controversy, and the defendant's motion to dismiss under Mass.R.Civ.P. 12(b)(2), 365 Mass. 755 (1974), should have been denied. Accordingly we reverse and remand the case to the Superior Court for further proceedings.

The material facts, which are drawn from the written submissions of the parties, are not in dispute. In exchange for a loan made to O'Connor,[1] a Massachusetts company in the wholesale and retail lumber business in Massachusetts, the plaintiff (the bank), which has a principal place of business in Boston,[2] acquired a perfected security interest in O'Connor's existing and after-acquired inventory. The underlying security agreement prohibited O'Connor from disposing of its inventory other than in the ordinary course of its business.[3]

The defendant (Hoover), a Delaware corporation with its principal place of business in Atlanta, Georgia, ships wood products to retailers and distributors in Massachusetts and elsewhere; among its customers was O'Connor. O'Connor, in financial difficulty, telephoned Hoover in the fall of 1990 to arrange the delivery of certain lumber in exchange for credit against an antecedent debt O'Connor owed Hoover. After a series of phone calls and correspondence between Hoover and O'Connor, it was agreed that the lumber would be delivered to Hoover in exchange for a credit memo to O'Connor in the amount of $45,766.12. The inventory was transported to Hoover in early November, 1990 — a disposition of O'Connor's inventory that the bank claims violated the se-

---

[1]O'Connor filed for bankruptcy on February 13, 1991.

[2]This fact is admitted in the answer.

[3]The security agreement provided in relevant part as follows. "[O'Connor] shall not sell, exchange, or otherwise dispose of [its inventory], other than the sale of inventory in the ordinary course of business, without the express written authorization of [the bank]. The disposition of inventory in partial or complete satisfaction of any debt shall not be deemed a sale of inventory in the ordinary course of business. In the event of any sale, exchange or other disposition of the [inventory] without the consent of the [bank], the security interest of [the bank] shall nevertheless continue in said [inventory], and all proceeds of said sale, exchange or other disposition shall remain Collateral hereunder."

curity agreement. The bank demanded the return of the lumber; Hoover refused.[4] The bank responded by bringing suit in the Superior Court setting up the claim that Hoover was a converter of goods rightly belonging to the bank.[5]

The exercise of personal jurisdiction over a foreign defendant is proper only when (i) the terms of the Massachusetts long-arm statute, G. L. c. 223A, § 3, are met and (ii) the constitutional requirements of due process are satisfied. See *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. at 5-6. It is the plaintiff who has the burden of proving that the court has jurisdiction over the defendant. See, e.g., *Droukas* v. *Divers Training Academy, Inc.*, 375 Mass. 149, 151 (1978); *Kleinerman* v. *Morse*, 26 Mass. App. Ct. 819, 820 (1989). We accept as true the uncontroverted facts that appear in the materials presented to the Superior Court. See, e.g., *Heins* v. *Wilhelm Loh Wetzlar Optical Mach. GmbH Co. KG*, 26 Mass. App. Ct. 14, 16 (1988); *Maker* v. *Bermingham*, 32 Mass. App. Ct. 971, 972 (1992).

We turn to the question whether Hoover was transacting business in Massachusetts. Section 3(*a*) of G. L. c. 223A, as amended by St. 1969, c. 623, grants jurisdiction "over a person . . . as to a cause of action in law or equity arising from the person's . . . transacting any business in this commonwealth."[6]

---

[4]Subsequently, Hoover agreed to return the lumber, but the bank did not accept the belated offer and now seeks only damages.

[5]The uniform laws comment to G. L. c. 106, § 9-306(2), notes the availability of an action for conversion when the debtor makes an unauthorized disposition of the collateral.

[6]The subsection is grounded on specific personal jurisdiction, that is, the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from those forum-based contacts. *Tatro* v. *Manor Care, Inc.*, 416 Mass. 763, 767 (1994). *United Elec., Radio & Mach. Workers* v. *163 Pleasant St. Corp.*, 960 F.2d 1080, 1088-1089 (1st Cir. 1992), appeal after remand, 987 F.2d 39 (1st Cir. 1993). See generally *Helicopteros Nacionales de Colombia, S.A.* v. *Hall,* 466 U.S. 408, 414-416 & n.9 (1984). General jurisdiction, on the other hand, "exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *United Elec.*

The Supreme Judicial Court has read the "transacting any business" language of § 3(a) broadly, "in keeping with our view that the Massachusetts long-arm statute 'functions as "an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." ' " *Tatro* v. *Manor Care, Inc.*, 416 Mass. 763, 771 (1994), quoting from *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. at 6. "Although an isolated (and minor) transaction with a Massachusetts resident may be insufficient, generally the purposeful and successful solicitation of business from residents of the Commonwealth . . . will suffice to satisfy [the "transacting any business"] requirement." *Tatro* v. *Manor Care, Inc.*, *supra* at 767.

Hoover emphasizes that it has no office, agents, or assets in Massachusetts, and there is no allegation or evidence it advertised here. What Hoover overlooks is the substantial volume of business it did with O'Connor in Massachusetts. The exhibits filed by the bank in opposition to the motion to dismiss show that, from April through August of 1990, Hoover, in more than thirty separate transactions, shipped lumber to O'Connor in Massachusetts. The aggregate sales price of those shipments was more than $375,000. Hoover's business with O'Connor was hardly an "isolated transaction." Contrast *Droukas* v. *Divers Training Academy, Inc.*, 375 Mass. at 154. To the contrary, this volume of business reveals a "purposeful and successful solicitation of business from residents of the Commonwealth . . . ," *Tatro* v. *Manor Care, Inc.*, *supra* at 767, and, contrary to the judge's ruling, satisfies the "transacting any business" requirement.

We turn to the "arising from" clause in § 3(a): whether the alleged conversion *arose from* Hoover's transaction of business in the Commonwealth. In *Tatro* v. *Manor Care, Inc.*, 416 Mass. at 770-771, the Supreme Judicial Court held that the "arising from" language in G. L. c. 223A, § 3 "should be interpreted as creating a 'but for' test." Rejecting the analysis in *Marino* v. *Hyatt Corp.*, 793 F.2d 427, 428-

*Workers* v. *163 Pleasant Street Corp.*, *supra* at 1088. General Laws c. 223A, § 3(d), is predicated on general jurisdiction.

430 (1st Cir. 1986), and *Pizarro* v. *Hoteles Concorde Intl., C.A.*, 907 F.2d 1256 (1st Cir. 1990) (the issue is whether the business transacted "can be said to be the legal, or proximate cause of the injuries suffered by a plaintiff"), the court followed the cases decided in the Fifth, Sixth, and Ninth Circuits.

Adopting the language of *Lanier* v. *American Bd. of Endodontics*, 843 F.2d 901, 909 (6th Cir.), cert. denied, 488 U.S. 926 (1988), the court said "a claim arises from a defendant's transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State." *Tatro* v. *Manor Care, Inc., supra* at 771. The fact that the claim sounds in tort and that the business transacted is contractual in character is not determinative, for "the contractual contact is a 'but for' causative factor for the tort since it brought the parties within tortious 'striking distance' of each other." *Id.* at 770, quoting from *Prejean* v. *Sonatrach, Inc.*, 652 F.2d 1260, 1270 n.21 (5th Cir. 1981).

Here, the return of the lumber by O'Connor, and the subsequent alleged conversion by Hoover, would not have occurred but for Hoover's substantial volume of sales of lumber to O'Connor in Massachusetts. Thus, it can fairly be said that the bank's claim against Hoover for conversion was "made possible by, or lies in the wake of," Hoover's transacting business in Massachusetts. Asserting jurisdiction in this case, as we do, is consistent with the well established view that the long-arm statute is an assertion of jurisdiction to the limits allowed by the Constitution of the United States. *Tatro* v. *Manor Care, Inc., supra* at 771.

The fact that the bank was not a party to Hoover's lumber sales in Massachusetts is of no consequence; what matters is that Hoover regularly sold and delivered substantial quantities of lumber to O'Connor in Massachusetts, and but for the ongoing contractual arrangements between Hoover and O'Connor and the ensuing transfer of lumber from O'Connor's inventory the bank would not have suffered any injury. Further, the bank's filed financing statements dis-

closed to any interested party the bank's interest in O'Connor's inventory.[7] The fact that Hoover was aware of O'Connor's pressing financial difficulties only emphasizes the point.

Finally, we consider whether requiring Hoover to defend itself in Massachusetts comports with due process. The issue is "whether there was some minimum contact with the Commonwealth which resulted from an affirmative, intentional act of the defendant, such that it is fair and reasonable to require the defendant to come into the State to defend the action." *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. at 7. We conclude that Hoover's due process rights will not be offended by requiring it to defend itself in Massachusetts.

As we have previously noted, Hoover's contacts with Massachusetts were not isolated or random events. Cf. *"Automatic" Sprinkler Corp. of America* v. *Seneca Foods Corp.*, 361 Mass. 441 (1972) (purchase of single item from Massachusetts company, accompanied by partial payment, held insufficient to confer long-arm jurisdiction where it had little impact on Massachusetts commerce); *Droukas* v. *Divers Training Academy, Inc.*, 375 Mass. at 153-154 (isolated transaction where defendant's only business within Commonwealth was the single sale and shipment of two engines). Like the defendant in *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. at 9, the defendant here had "engaged in an enterprise of substantial dimension and duration with a party whose business headquarters . . . were . . . in Massachusetts." As noted, its regular shipments of lumber to O'Connor alone[8] amounted to more than $375,000 in a four-

---

[7]The bank's filed financing statements recite, in an exhibit attached to the statements, that the bank's security interest covers O'Connor's inventory "of every type and nature . . . ."

[8]Consideration of all of Hoover's contacts with Massachusetts are relevant to this inquiry. See *Good Hope Industries, Inc.* v. *Ryder Scott Inc.*, *supra* at 10 n.17. In this aspect of the matter, we note that Hoover's president states in his affidavit that "Hoover products are shipped to Massachusetts companies and sold by retailers or distributors. These customers then pay Hoover or make returns of the goods."

month period. "Had . . . [Hoover] not desired to expose itself to a claim of Massachusetts jurisdiction, it was within its power to refuse to deal" with O'Connor. *Id.* at 12.

In view of the result we reach, we need not consider the bank's appeal from the denial of its second motion for relief from judgment.

The judgment is reversed, and the case is remanded for further proceedings.

*So ordered.*