41 Mass. App. Ct. 225                                225

Telco Communications, Inc. *v.* New Jersey State Firemen's Mutual Benevolent Association.

TELCO COMMUNICATIONS, INC. *vs.* NEW JERSEY STATE
FIREMEN'S MUTUAL BENEVOLENT ASSOCIATION.

No. 95-P-642.

Bristol. March 8, 1996. - August 30, 1996.

Present: ARMSTRONG, KAPLAN, & GILLERMAN, JJ.

*Practice, Civil,* Choice of forum. *Conflict of Laws. Contract,* Choice of
forum clause, Choice of law clause. *Jurisdiction,* Long-arm statute,
Foreign corporation. *Due Process of Law,* Jurisdiction over nonresident.

In an action seeking damages for breach of contract in which the defendant
moved to dismiss for lack of personal jurisdiction, the judge correctly
concluded that a certain clause in the contract stating that "[t]his agree-
ment shall be governed by, construed in accordance with, and only
enforced pursuant to the laws of . . . Massachusetts," was mischarac-
terized by the plaintiff as a forum selection clause rather than as a
choice of law clause. [227-228]

The contacts with Massachusetts of the defendant in an action brought
here, consisting merely of entering into a contract with the plaintiff
which had a place of business in Massachusetts, of telephone or other
communications between the parties largely about operations in New
Jersey, and of the defendant's right to approve the final product to be
prepared by the plaintiff in Massachusetts, were not sufficient to confer
on a Massachusetts court personal jurisdiction over the defendant under
§ 3 (*a*) of G. L. c. 223A, the long-arm statute. [228-233]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 4, 1993.

The case was heard by *John J. O'Brien, J.*

*Peter S. Brooks* for the plaintiff.

*Douglas A. Hale* for the defendant.

KAPLAN, J. Summarized, the complaint herein, filed on
October 4, 1993, in Superior Court, Bristol County, alleged
the following. The plaintiff Telco Communications, Inc.
(Telco), a Rhode Island corporation with a usual place of
business in Seekonk, Massachusetts, provides fund raising
services to civic organizations throughout the country. The

defendant, New Jersey State Firemen's Mutual Benevolent Association (FMBA), is a New Jersey nonprofit corporation located in Rahway, New Jersey, that promotes the interests of professional firefighters in that State. On December 14, 1992, the parties entered into an agreement and addendum (annexed to the complaint) by which Telco undertook to solicit the purchase of advertising by companies and others in New Jersey and to publish and distribute a publication for FMBA which would include the advertising copy. Telco would supply salespersons to sell the advertising who would be independent contractors in relation to FMBA but would be directed in their work by Telco. The advertising revenues would be received by FMBA and divided by agreed percentages among Telco, FMBA, and the salespersons, with a guarantee by Telco that FMBA would receive a minimum of $30,000.

Solicitation of the advertising would not be feasible or advisable in certain localities of the State, and the agreement provided that FMBA would provide Telco with a list of these communities by December 31, 1992. Telco alleged that FMBA provided a list in January, 1993, after Telco had commenced solicitation. The list comprised some twenty-five communities.

The gravamen of the complaint was that the list was delivered late, that the restrictions imposed by the list were excessive or otherwise improper (details were not supplied), and that FMBA thus violated the agreement by impairing or impeding the program to be conducted by Telco, and preventing Telco from performing, thus disabling it to meet the guaranteed $30,000 revenue for FMBA. Nevertheless, the complaint alleged, FMBA contended that it was entitled to so much of the $30,000 as remained unpaid. Telco in count I of the complaint demanded damages for breach of contract and in count II requested a declaration of rights as between the parties.

On January 20, 1994, the defendant FMBA moved to dismiss the action under Mass.R.Civ.P. 12(b)(2), 365 Mass. 755 (1974), for lack of personal jurisdiction.

On the same day, the plaintiff Telco moved for a preliminary injunction under Mass.R.Civ.P. 65, 365 Mass. 833 (1974), to restrain the defendant FMBA from maintaining a countersuit commenced on December 13, 1993, in the

Superior Court for Union County in New Jersey, alleged to raise the same legal issues as the instant action (details not supplied).

The record also comprises an affidavit of David Mitchell, the plaintiff's national sales manager at the time, and an affidavit of Charles K. Steinel, the defendant's president, addressed to the issue of the jurisdiction of the court.

On April 15, 1994, a judge of our Superior Court, with memorandum of decision, allowed the defendant's motion to dismiss for want of jurisdiction and, accordingly, denied the plaintiff's motion for a preliminary injunction. The plaintiff filed a notice of appeal from the judgment of dismissal.

1. The plaintiff's primary argument in response to the motion to dismiss was that the agreement of December 14, 1992, contained in paragraph 16 what the plaintiff chose to characterize as a "forum selection" clause naming Massachusetts as the exclusive forum.[1] The judge below, after quoting from *Ernest & Norman Hart Bros., Inc.* v. *Town Contractors, Inc.*, 18 Mass. App. Ct. 60, 65 (1984), the statement that the "general attitude of courts toward contractual forum selection provisions obviously has changed in the direction of recognizing them," said that the Supreme Judicial Court had not yet gone the whole way to recognition. Not long after the judge wrote, the Supreme Judicial Court "accept[ed] the modern view that forum selection clauses are to be enforced if it is fair and reasonable to do so." *Jacobson* v. *Mailboxes Etc. U.S.A., Inc.*, 419 Mass. 572, 574-575 (1995).

This development, however, does not help the plaintiff, for, as the judge also wrote, paragraph 16 was mischaracterized by the plaintiff and was not a forum selection clause. The clause read: "This agreement shall be governed by, construed in accordance with, and only enforced pursuant to the laws of the Commonwealth of Massachusetts." This pointed to Massachusetts law as controlling in case of dispute; it did not express an agreement of the parties that Massachusetts was to be the exclusive forum in which a legal proceeding could be maintained. As the judge remarked, the clause bore no resemblance to any provisions of the contracts appearing in

---

[1]Although service of process herein was made pursuant to the long-arm statute, we are content to assume for the purpose of this appeal that the plaintiff could attempt to establish jurisdiction on the alternative ground of consent by reason of the supposed forum selection clause.

cases cited by the plaintiff that could be identified as forum selection provisions. So, for example, in *Daley* v. *People's Bldg., Loan & Sav. Assn.*, 178 Mass. 13, 19 (1901) ("Any action . . . shall be brought . . . in the County of Ontario, State of New York"); *Mittenthal* v. *Mascagni*, 183 Mass. 19, 21 (1903) ("Whatever difference or question there might arise between the parties . . . will be acted upon by the civil authorities of Florence, Italy"); *Maxwell Shapiro Woolen Co.* v. *Amerotron Corp.*, 339 Mass. 252, 257 (1959) ("any arbitration shall take place in New York"); *Ernest & Norman Hart Bros., Inc.* v. *Town Contractors, Inc.*, 18 Mass. App. Ct. at 62 ("Connecticut law shall have jurisdiction . . . and such disputes shall be adjudicated in Hartford County" — this clause was not enforced for reasons of justice)[2]; *C. Pappas Co.* v. *E. & J. Gallo Winery*, 565 F. Supp. 1015, 1016 (D. Mass. 1983) ("shall be brought only in a court having jurisdiction and venue at the home office of Winery").

The plaintiff seems to attach choice-of-forum significance to the word "enforced" in the phrase "enforced pursuant to the laws of the Commonwealth of Massachusetts" in paragraph 16, but that merely carries out the thought that Massachusetts law is to control, whatever the forum. On this point, see *Morris* v. *Watsco, Inc.*, 385 Mass. 672, 673, 674-675 (1982), where the agreement provided that it was to be "construed and enforced according to the laws of the State of Florida"; in *W.R. Grace & Co.* v. *Hartford Acc. & Indem. Co.*, 407 Mass. 572, 582 n.13 (1990), the court construed the clause in *Morris* as a choice-of-law clause rather than a forum selection clause.

2. Should its forum selection contention fail, Telco argued that jurisdiction could be sustained under G. L. c. 223A, § 3(*a*), as amended by St. 1969, c. 623, a portion of the long-arm statute.[3] This calls for an evaluation of the relations between the parties, their respective activities under the contract, and the linkages, if any, between the defendant's participation in the transaction and the Commonwealth of

---

[2]Similarly, *Water Energizers Ltd.* v. *Water Energizers, Inc.*, 788 F. Supp. 208, 211 (S.D. N.Y. 1992), now cited by the plaintiff, used the expression "jurisdiction of Indiana shall govern."

[3]"A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (*a*) transacting any business in this commonwealth."

Massachusetts. The sources are the complaint and the Mitchell and Steinel affidavits. The burden of demonstration is on Telco, which is asserting jurisdiction, see *Droukas* v. *Divers Training Academy, Inc.,* 375 Mass. 149, 151 (1978); *Tatro* v. *Manor Care, Inc.,* 416 Mass. 763, 767 (1994), and the statute is to be read with much generosity of breadth, as noted recently in *Tatro,* 416 Mass. at 771, and *Connecticut Natl. Bank* v. *Hoover Treated Wood Prod., Inc.,* 37 Mass. App. Ct. 231, 235 (1994).

In summary, the relevant facts appear as follows. Telco does a nationwide business. It had a place of business in Seekonk although it was not a domestic corporation; it also had an office in West Orange, New Jersey. FMBA was by its nature bound to New Jersey; it had no office or agent or other such "presence" in Massachusetts.

Telco wanted a contract with FMBA and initiated negotiations to that end. These were promoted by meetings between representatives of the parties, all of which occurred in Rahway, New Jersey, where FMBA is located. One or more drafts of the agreement were faxed; the final agreement (with addendum) of December 14, 1992, was evidently executed in New Jersey by Mitchell, for Telco, and Steinel, for FMBA. This was the first and only contractual relationship between the parties; there was no earlier business connection.

The main point and purpose of the contract was to secure paid-for advertising from companies and others located and operating in New Jersey which would appear in a publication that would circulate in that State and celebrate local firefighters. Telco undertook by contract to solicit this advertising; it selected the personnel who actually did the work of soliciting around the State. These persons, all from New Jersey, were independent contractors vis-à-vis FMBA, but took their direction from Telco. The moneys received from the advertisers went into an account maintained by FMBA, from which FMBA paid out (as finally adjusted) 28% to the independent contractors and 42% to Telco, retaining the balance of 30% which, if it fell in the end below the $30,000 guaranteed minimum, was to be made good by Telco.[4]

The composition and printing of the eventual publication

---

[4]These percentages were finally fixed in a *second* addendum signed by the parties dated June 2, 1993. This is annexed to the complaint, but its terms are not referred to in the body of the complaint. The main contract set

was to take place in Seekonk. There were telephone calls between Seekonk and sources in New Jersey, some with the independent contractors, some with FMBA proper. Advertising information and copy were exchanged between the two places. FMBA reserved the right to okay the content of the publication. The contract evidently failed well before the stage of publication, and FMBA asserts that as its share of the revenues it received no more than $7,306.99.

The controversy between the parties originating, as the complaint avers, in exclusions from the permissible range of solicitation, centers in the activities within New Jersey. As a practical matter, then, the bulk of the witnesses to be called in an eventual trial might be expected to come from the same location.

In *Tatro* v. *Manor Care, Inc.,* 416 Mass. at 767, the court said, "General Laws c. 223A, § 3, sets out a list of specific instances in which a Massachusetts court may acquire personal jurisdiction over a nonresident defendant. Jurisdiction is conferred only 'when some basis for jurisdiction enumerated in the statute has been established.' *Good Hope Indus., Inc.* v. *Ryder Scott Co.,* 378 Mass. 1, 6 (1979). . . . If the literal requirements of the statute are satisfied, it also must be established that 'the exercise of jurisdiction under State law [is] consistent with basic due process requirements mandated by the United States Constitution.' *Good Hope, supra* at 5-6. A plaintiff has the burden of establishing facts to show that the ground relied on under § 3 is present. *Droukas* v. *Divers Training Academy, Inc.,* 375 Mass. 149, 151 (1978)." *Good Hope* also says (378 Mass. at 6) that the two questions "tend to converge."

As to "literal" compliance with § 3(*a*) in the present case, we think it can fairly be said not merely that the center of gravity of the transaction was in New Jersey, but that the

April 24, 1993, as the date for completion of performance, but the second addendum in paragraph 1 grants Telco an extension to September 20, 1993, to provide FMBA with "fire prevention booklets." What is implied, and assumed in Mitchell's affidavit, is an extension of the whole contract performance to September 20, for paragraph 3 states: "On or before August 31, 1993, Telco will write a check for the remaining balance of the $30,000.00 guaranteed by this contract." This extension might have a bearing on the materiality of the provision for prompt notice of the prohibited localities, breach of which is charged in the complaint, and the August 31 check requirement emphasizes Telco's guarantee obligation.

great heft of it was there, leaving little by way of a connection of the defendant FMBA with Massachusetts that could qualify as a transaction of business in Massachusetts within the scope of § 3(*a*).[5] That FMBA entered into a contract with Telco which has a place of business in Massachusetts is itself hardly enough to satisfy § 3(*a*), see *"Automatic" Sprinkler Corp. of America* v. *Seneca Foods Corp.*, 361 Mass. 441, 443-446 (1972), and beyond that we have only some telephone or other communications between the parties largely about the operations in New Jersey, and, finally, FMBA's right under the agreement (but rendered nugatory by events) to approve the final publication to be prepared by Telco in Massachusetts. We recall the appearance of a choice-of-law clause in the agreement; this could perhaps serve as a makeweight but only if other factors made a substantial case. See *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 481 (1985); *Shipley Co.* v. *Clark*, 728 F. Supp. 818, 822 (D. Mass. 1990).

Finally, there can be no suggestion that this business had a material impact on the commerce of Massachusetts. Compare *Connecticut Natl. Bank* v. *Hoover Treated Wood Prod., Inc.*, 37 Mass. App. Ct. at 234.

Telco's brief cites four cases to sustain jurisdiction, but the showing is poor. In *Droukas* v. *Divers Training Academy, Inc., supra*, jurisdiction under § 3(*a*) failed where a Massachusetts buyer sued for breach of warranty a Florida seller who had done little more in Massachusetts than cause the goods to be delivered there. (Telco might have cited *"Automatic" Sprinkler Corp. of America*, 361 Mass. at 444-445, to similar effect.) In *Good Hope, supra*, the nonresident defendant under contract sent numerous technical reports to the Massachusetts plaintiff about business opportunities, and the parties communicated and consulted extensively thereon; having made investments on this basis, the plaintiff suffered losses; jurisdiction was held to exist under § 3(*a*) for a suit grounded on the defendant's negligence in furnishing the advice. The defendant's links to the Commonwealth were extensive, although largely informational and intangible.[6] In *Tatro, supra*, the California hotel had to stand suit here under

---

[5]The judge below emphasized that the claimed breach of contract was associated with the activities in New Jersey.

[6]*Little, Brown & Co.* v. *Bourne*, 493 F. Supp. 544 (D. Mass. 1980), resembles *Good Hope*. There was busy and continued collaboration between

§ 3(*a*) for the negligent injury at the hotel of a Massachusetts resident: the key connection was the hotel's systematic solicitation of patronage in Massachusetts. *Connecticut Natl. Bank* v. *Hoover Treated Wood Prod., Inc., supra,* follows *Tatro*; the setting was different, but jurisdiction could rest on the purposeful and successful solicitation of business in Massachusetts, together with a considerable volume of business with the central figure in the case operating in Massachusetts.

The jurisdictional weakness of the present case can be perceived from another angle. Suppose a case where one in New Jersey (buyer) contracts with another in Massachusetts (seller) for goods to be manufactured in Massachusetts or services to be rendered here. As *Good Hope* indicates, a Massachusetts court may well be reluctant to find a § 3(*a*) jurisdictional basis for suit against the New Jersey buyer; for one thing, so to hold might scare such business out of the Commonwealth, as nonresident buyers would shrink from the prospect of being haled before the — for them — foreign forum. See *Good Hope,* 378 Mass. at 9 n.14. The court's reluctance is overcome, as in *Good Hope* itself, where the nonresident seller has participated actively in the work ongoing in Massachusetts.[7] But if there is reluctance to assume § 3(*a*) jurisdiction in the case supposed, how much more is and should be the reluctance where the seller's work of manufacture or otherwise is performed, not at the seller's locus in the Commonwealth, but in the buyer's home State. In *Nichols Assocs.* v. *Starr,* 4 Mass. App. Ct. 91 (1976), cited by FMBA, a Massachusetts surveyor did work in Connecticut for a Connecticut developer; Massachusetts elements in the case were present but minor. Our court held against § 3(*a*) jurisdiction of an action against the Connecticut developer, and *Good Hope* agrees, 378 Mass. at 9 n.14. The present case is like *Nichols.*

Constitutional considerations "converge" with the literal. It is hard to find here "some act by which the defendant

the defendant author of New York and the plaintiff publisher of Massachusetts in producing a book, with drafts and criticisms exchanged, etc. Plaintiff sued defendant to recover the defendant's advance after failure of the project. Jurisdiction was upheld in the United States District Court for Massachusetts.

[7]The distinction for jurisdictional purposes between passive and active purchasers is brought out in *Whittaker Corp.* v. *United Aircraft Corp.,* 482 F.2d 1079 (1st Cir. 1973), cited in *Good Hope.*

purposely avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson* v. *Denckla,* 357 U.S. 235, 253 (1958). More properly, one could say that the plaintiff by its activities invoked New Jersey's benefits and protection. Nor have "the defendant's conduct and connection with the forum State [been] such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.* v. *Woodson,* 444 U.S. 286, 297 (1980). This "fair warning" required by the due process clause "that a particular activity may subject [an individual] to the jurisdiction of a foreign sovereign," *Burger King Corp.* v. *Rudzewicz,* 471 U.S. 462, 472 (1985), quoting from Stevens, J., concurring in *Shaffer* v. *Heitner,* 433 U.S. 186, 218 (1977), "is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum," *Burger King, supra,* quoting from *Keeton* v. *Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984). The warning applies to the present plaintiff in relation to New Jersey, rather than to the defendant in relation to Massachusetts.

*Judgment affirmed.*