## SCHLOTTMAN v. WHARTON COUNTY.
No. 15429.

Court of Civil Appeals of Texas.
Fort Worth.

May 22, 1953.

Rehearing Denied June 19, 1953.

See also, 248 S.W.2d 306.

Ben H. Schleider, Jr., Brenham, and L. L. Warner, Houston, for appellant.

Lloyd Rust, Jr., Wharton, Looney, Clark & Moorhead, Arthur Mitchell, and R. Dean Moorhead, Austin, for appellee.

MASSEY, Chief Justice.

From judgment of condemnation of 1.30 acres of farming land for purposes of

right-of-way for drainage ditch to drain a county road in Wharton County, the landowner appeals.

Affirmed.

It appears that appellant owned certain real estate comprising a farm in Wharton County, rectangular in shape, being broader in its north-south extensions and narrower in its east-west extensions. Along the west side of the property ran a county road known as Branum Cut-Off Road. To the west of the Branum Cut-Off Road was a sort of lake which was dry in very dry seasons, but which in other seasons would contain water, and in wet seasons would overflow into the drainage ditch along the west side of Branum Cut-Off Road, and sometimes over the road. On this road, and at the west side of appellant's land in question was a bridge or culvert through which the water would pass, by way of natural drainage, and flow in an easterly direction across appellant's land and on to a river to the east thereof. To the east of the land, and at least part way onto the land of the appellant, this drainage was assisted by what is known as Treadway's ditch.

A season of unduly wet weather occurred, as result of which it was discovered that the Treadway ditch had become clogged somewhat and was not functioning in such wise that the overflow water, coming from the west to the road; and from the road onto appellant's land, was being drained off adequately. Appellant approached his County Commissioner about cleaning out such drainage ditch. Following this, and at least in part occasioned by appellant's request, the Commissioner caused to be instituted work upon the ditch by "drag-line" in cleaning it out. The work began to the east—working toward the west, and in the direction of appellant's land. In the prosecution of the work the ditch was being widened and deepened considerably, so that it was evident that if the work proceeded in the westerly direction being taken by the "drag-line" crew there would be a substantial ditch excavated across appellant's property. Upon this becoming apparent the appellant protested and his protests

stopped the operations at his east property line. The "drag-line" crew then moved its equipment to the west of Branum Cut-Off Road and continued excavation operations for a considerable distance into and upon the land of appellant's neighbor to the west. This work consisted in the opening of drainage ditch or ditches, the primary purpose of which, according to appellant, was to drain the lake area. Without doubt the work aided toward eliminating the periodic submersion of many acres of land lying west of the appellant's. While it was a matter in dispute in the case, substantial testimony disclosed that the new ditch followed the natural drainage way of the water from the neighbor's land to the west and from the lake principally located thereon, to the bridge or culvert on Branum Cut-Off Road, and along the line the "drag-line" crew attempted to excavate across the appellant's property (being the property sought to be condemned), and thence into the old Treadway ditch. While, it was likewise a matter in dispute in the case, substantial testimony disclosed that the ditch caused an acceleration of the rate of flow of the water from the premises of appellant's neighbor to the west into the drainage ditch paralleling the Branum Cut-Off Road (and comprising a part of such road), and increasing the amounts of water which would get into such ditch and even onto the road, and also onto the appellant's land, on occasions of heavy rainfall. In other words, it was shown that the drainage ditches on the neighbor's land allowed the water to get to the road faster, so that it rose at the ditch along the road and overflowed, and which had not occurred prior to the time the ditches were dug on the neighbor's land when the rate of flow was not so rapid, though the amount of draining water was substantially the same. This circumstance undoubtedly increased the necessity for or desirability to have the new excavation attempted in extension of the Treadway ditch across the appellant's property, that the maintenance of the Branum Cut-Off Road could be better effected.

As result of the appellant's unwillingness to allow the operations across his land

(which concededly would have destroyed at least a part thereof for farming purposes), the County Commissioner to whom the appellant had first proposed the cleaning out of the Treadway ditch to the east of his property caused an offer to be made to appellant for a right-of-way across appellant's land for purposes of opening the ditch connecting the Treadway ditch with the bridge and culvert on Branum Cut-Off Road and the drainage ditches to the west thereof. The amount offered was either refused or was not affirmatively either accepted or rejected by appellant. Then the Commissioners' Court of the appellee County initiated proceedings under provisions of Texas Revised Civil Statutes of 1925, Article 3264 et seq., Vernon's Ann.Civ.St. art. 3264 et seq., as to Eminent Domain, for purposes of county road maintenance by drainage, as authorized by Article 6789a, and under the general authorization of Article 3264a. Special Commissioners were appointed and after due and proper notice a hearing was had, at which hearing the appellant appeared, resisting condemnation. A finding resulted that appellant would sustain damages of $100 as result of condemnation of the land sought.

After appellant certified within proper time his dissatisfaction with the award, in accordance with provisions of T.R.C.S., Article 3266, a de novo trial was held in the County Court of Wharton County before a jury, which found that the 1.30 acres of appellant's land in the right-of-way sought to be condemned was of the reasonable market value of $307.70 per acre, the value of the remainder of appellant's land would be left unchanged as result of the condemnation of the 1.30 acres, and that the right-of-way on the 1.30 acres sought to be condemned was necessary for a drainage ditch to drain the water accumulating in the ditches of the Branum Cut-Off Road (a public purpose). The jury (by answer "no" to a special issue) refused to find that the right-of-way was sought for a "private use" of a particular individual, or individuals, as contradistinguished from the whole community. The jury found that prior to the filing of the suit the appellee County made appellant an offer for the purchase of the right-of-way, refusing to find however (by answer "no" to a special issue) that such offer was refused by the appellant. No objection appears to have been made to the form or submission of the issues. The appellant did request submission of other issues, which were refused.

Based on this verdict, the trial court entered judgment condemning the 1.30 acres of appellant's land, and awarding appellant $400.01 damages for such taking.

▮ Appellant complains because the offer claimed by appellee to have been made to him for the 1.30 acres in question was not shown to have been made by anyone with authority to make or agree to such or to bind the appellee County with reference thereto. The record reflects that this was not shown. Neither was anything to the contrary shown. Appellee County pleaded that it had made an offer to appellant for the land sought which had been refused, and that it had been unable to agree with appellant, and in so doing sufficiently pleaded compliance with statutory conditions precedent. 33 Tex.Jur., p. 460, sec. 42. The authority of the agency through which the alleged negotiations with appellant were had in behalf of appellee County's Commissioners, and the authority of such Commissioners to act in relation to the attempted purchase, though jurisdictional to condemnation proceedings, would, if regularly authorized or performed, have been authorized or performed by the Commissioners' Court of Wharton County pursuant to duty performed by the members thereof as public officers. Actions as in question here are necessarily pursuant to statutory duties. Public officers are presumed to have performed their duties and to have acted in a regular and lawful manner. As to such—if the appellant had desired to raise the question as to the prematurity of the suit based upon the propriety of the action having been initiated without proper foundation by way of an order on the part of the Commissioners' Court authorizing the offer in question to be made to him,—or authorizing an attempt to be made to agree with him upon or within a certain figure for the land desired,— he was obliged to raise the matter himself

by way of an affirmative pleading in bar. His entitlement to adduce evidence thereon must be predicated by special plea, and his would be the burden thereon. Not having done so in this case, nor having raised the matter by any objection to the suit touching on such alleged irregularity prior to announcing ready for trial on the issues presented, the appellant has waived the right to contest the judgment by reason thereof. 33 Tex.Jur., p. 477, sec. 55 (Pleading); 17 Tex.Jur., p. 276, sec. 75 (Evidence—Civil Cases); Texas Law of Evidence, McCormick & Ray, p. 92, sec. 54 and p. 100, sec. 57; 14 Texas Law Review 414; Farm & Home Savings & Loan Association of Missouri v. Muhl, Tex.Civ.App., 1931, 37 S.W.2d 316 (Waco), writ refused, and cases therein cited; State v. Palacios, Tex. Civ.App., 1912, 150 S.W. 229 (Austin), error refused; Sanders State Bank v. Hawkins, Tex.Civ.App., 1911, 142 S.W. 84 (Texarkana).

■ As was proper, the appellee County undertook the burden of proof to the effect that it had complied with jurisdictional prerequisite, the failure to agree as between it and appellant. As heretofore stated, the jury found that the said County had made an offer to the appellant for the right-of-way in question, but refused to find that the offer was refused by appellant. Appellant contends there was insufficient evidence of "failure to agree" to support the judgment.

■ It is shown in 16 Tex.Jur., p. 731, sec. 117, that the purpose of the requirement of the statute, T.R.C.S., Article 3264, that an effort must be made to agree, prior to condemnation proceedings, is to save time and expenses in cases wherein an agreement is possible. In light of the fact that the parties to this suit have already litigated an injunction suit in a trial court and in an appellate court (see 248 S.W.2d 306), and have litigated the condemnation suit in the County Court of Wharton County and now here on this appeal, it can readily be seen that the author of the above section of Texas Jurisprudence knows whereof he speaks. In the same section it is shown that all that is required to comply with the statute is the making of an offer by a county, and that nothing affirmative is required to be done by the landowner. In other words, in a case where the landowner "stands mute" and neither accepts nor rejects the offer so made to him by or in behalf of a county, the law will construe his silence a rejection of the offer, and that such a showing constitutes "a failure to agree" on the part of the parties.

It appears from the transcript that the petition in condemnation as against appellant was filed on January 26, 1952. On February 14, 1952, the County Judge of Wharton County appointed Special Commissioners to assess damages occasioned by the condemnation of appellant's land, and the date for the hearing by the Special Commissioners was set for May 14, 1952. Such hearing was had after due notice thereof to the appellant of at least five (5) days, at which hearing he appeared. Upon the trial in the court below the appellant himself testified that prior to initiation of condemnation proceedings he was offered $400 for the right-of-way in question by a Mr. Smith, who represented that he was making the offer for one Pete Nelson, a County Commissioner of Wharton County, known personally to the appellant to hold that office. This offer appellant denies having affirmatively refused, but he claims he replied, "no comment until I see my attorney." He testified further that it was approximately the day following this occurrence that he received a notice to appear for a hearing which undoubtedly further appears to have been the hearing by the Special Commissioners. Appellant's recollection as to having received notice appears to be erroneous as to time, but it is clear that he had notice of the hearing for some time prior to the date on which it was held. Taking the appellant's testimony at face value, he had at least three months' time between the time the $400 was offered to him and the time of the hearing before the Commissioners, and during this time he never affirmatively acted as to the offer of the $400. At one point the appellant testified that he said, "No, I won't take it" to Smith's offer of $400 for right-of-way to his land, but this he later contradicted, insisting that the transaction was one where

an offer was made which he never accepted or rejected.

The appellant having conceded that an offer was made to him for the interest sought in the land in question, to which he had not responded either by an affirmative or negative reply, such in itself constituted sufficient evidence establishing prima facie the fact of there having been sufficient "failure to agree" requisite to the establishment of jurisdiction of the court. Curfman v. State, Tex.Civ.App., 1951, 240 S.W.2d 482 (Dallas), writ ref., n. r. e. However, there was sufficient additional evidence on the matter from County Commissioner Nelson, who testified that he had made the $400 offer to appellant, and from his agent Smith who testified that he conveyed either Nelson's original $400 offer to appellant, or re-conveyed the same offer. Both of these witnesses testified that appellant refused the offer. The issue presented to the jury upon the question of whether the appellant refused the offer became wholly immaterial in view of the jury finding that the offer had been made, coupled with the undisputed evidence that such offer, if any, had never been accepted.

■ The appellant insists that the right-of-way sought to be condemned was for a private purpose as opposed to a public purpose and by reference to his pleadings it is clear that the appellant alleged fraud, bad faith or clear abuse of discretion on the part of the appellee County in condemning his property for purposes of right-of-way to drain Branum Cut-Off Road. He insists that the condemnation is violative of T.R.C.S., Article 6771 et seq. By reference to the statutes in question, it is noted that they are a part of those statutes under Title 116, Roads, Bridges and Ferries; and under Chapter 3 of this title, Maintenance of (county) Roads; and being section 5 of this chapter, Drainage. No conflict appears in the statutes in question with those under the subject of Eminent Domain. Indeed, Article 6789a reads: "Any Commissioners' Court is hereby authorized and empowered to acquire by purchase or by condemnation any new or wider right-of-way or land not exceeding one hundred (100) feet in width for stream bed diversion and drainage channels only in connection with the locating, relocating, construction, reconstruction or maintenance of any public road, and to pay for the same out of the County Road and Bridge Fund or out of any available county funds."

■ We need note that there was excavation on a neighbor's land to the west of Branum Cut-Off Road, which road ran parallel with but to the west of the property of the appellant, and which excavation did result in a surplusage of water (in point of given times) getting into the ditches of Branum Cut-Off Road and onto said road, from where it came onto appellant's property. The ditch or ditches on the neighbor's land were dug openly and not secretly. Appellant did nothing to prevent this. The time has passed during which appellant could have sought injunctive relief because thereof, assuming such was relief to which he would have been entitled. The question before us is not one in tort for which appellant seeks damages. The moral or legal propriety of the excavation to the west of Branum Cut-Off Road is not an issue in this case. True, it may have occasioned the necessity for appellee County to relieve the condition as applied to the road in question and its ditches, but whether or not the ditches to the west might have been dug for private rather than public purposes is not a question before us. It is clear that the situation existent at time of the institution of condemnation proceedings required that additional drainage facilites be acquired for maintenance of the Branum Cut-Off Road. This was the relief the appellee County sought to secure by the condemnation of the right-of-way across appellant's land. It would constitute a relief to the general public to have the road properly maintained by securing the drainage facility, hence the condemnation of the right-of-way across the appellant's land to open such drainage ditch would be for a public purpose. There was adequate evidence entitling the jury to find, as it did, that it was necessary to have the right-of-way for a drainage ditch to drain the ditches of Branum Cut-Off Road.

■ The appellant's specially requested issues were both properly refused. An-

swers to neither would resolve or aid in resolving any ultimate issue in the case. As to the one which inquired as to whether the drainage to be effected was beneficial to private individuals, as distinguished from the public generally, it is noted that the benefits derived from any given public program are almost always greater to some than to others. It is the purpose for which condemnation is sought which is to be examined; and if this purpose could in reasonable minds in good faith be deemed to be a public one, then there is justification and lawful authority for the condemnation proceedings. As to the issue requested as to whether the ditch constructed on appellant's neighbor's land to the west caused more water to get onto the road than would have otherwise been the case, the immateriality of such an issue to the condemnation proceeding is demonstrated by what we have said in the preceding paragraph.

The appellant contended that the compensation awarded in the judgment was inadequate for the property condemned and his remaining property, contended by him to have been damaged by the condemnation. "Compensation," as used in the constitutional provision as a limitation upon the power of eminent domain, implies full indemnity to the owner, i. e., a full and complete equivalent (usually monetary) for the loss sustained by the owner for the land which has been taken or damaged. Nichols on Eminent Domain, 3rd Ed., Vol. 4, sec. 12.1, subsection (4). There was sufficient evidence adequately supporting the finding by the jury as to the value of appellant's property condemned for right-of-way purposes, at $307.70 per acre, and supporting the judgment of $400.01. Upon sufficient evidence, the jury found that the market values of appellant's remaining land would be the same after the condemnation of the part desired for the right-of-way, as before such condemnation. There was no objection to the form of the issue, and there was no special damage plead or proved as to such remaining land. Appellant suffering no damage according to these issues and no other issues having been requested, he had not demonstrated any loss with reference thereto, and was not entitled to any damages or compensation additional to that awarded as to the 1.30 acres.

The land in question was condemned by virtue of authority given counties by T.R.C.S., Article 3264a, and T.R.C.S., Article 6789a. The latter article was passed in 1939 as a law individual unto itself, though included by the publisher of Vernon's Texas Revised Civil Statutes under the "Drainage" section of Title 116, Roads, Bridges and Ferries. The authority granted therein is in no way restricted by other articles under the same section. Specifically, the condemnation was for purposes of easement and right-of-way for a drainage ditch.

The pleadings of the appellee County sought and prayed for only easement and right-of-way of the 1.30 acres of appellant's land for the drainage ditch. The judgment described this as constituting the purpose of the condemnation. Certain subsequent language of the judgment could, except for the law hereafter referred to, be possibly construed to have conveyed—for appellant—to appellee County a greater estate than was sought by the suit.

Under Eminent Domain, T.R.C.S., Article 3270 provides: "Except where otherwise expressly provided by law, the right secured or to be secured to any corporation or other plaintiff in this State, in the manner provided by this law, shall not be so construed as to include the fee simple estate in lands, either public or private, * * * ."

In view of the effectiveness of T.R.C.S., Article 3270, at all material times, the right, title and interest of the appellant in and to the 1.30 acres of his land condemned is by the judgment in this case taken from him and transferred to the appellee County only to the extent of an easement and right-of-way therein for the construction and maintenance of a drainage ditch to drain a county road. It not being sought by the action of condemnation, nor necessary to the purposes of the condemnation, no greater estate is taken. 16 Tex. Jur., p. 679, sec. 82; Meaney v. Nueces

County Nav. Dist. No. 1, Tex.Civ.App., 1949, 222 S.W.2d 402 (San Antonio) ; Houston North Shore R. Co. v. Tyrrell, 1936, 128 Tex. 248, 98 S.W.2d 786, 108 A.L.R. 1508.

Judgment of the trial court is affirmed.