**MICHIGAN GENERAL CORPORATION,**
Appellant,

v.

**MOD–U–KRAF HOMES,
INCORPORATED,**
Appellee.

No. 19922.

Court of Civil Appeals of Texas,
Dallas.

May 22, 1979.

Rehearing Denied June 19, 1979.

Timothy A. Duffy, Crutcher, Hull, Ramsey & Jordan, Dallas, for appellant.

William D. Sims, Jr., David W. Elmquist, Jenkens & Gilchrist, Dallas, for appellee.

Before AKIN, ROBERTSON and CARVER, JJ.

AKIN, Justice.

The principal question presented on this appeal is whether the assumption of jurisdiction over appellee under Tex.Rev.Civ. Stat.Ann. art. 2031b (Vernon 1964) violates due process. Appellant Michigan General Corporation filed suit for damages in Dallas County, Texas, alleging that appellee Mod–U–Kraf Homes, a Virginia corporation, breached a merger agreement. In response, appellee filed a special appearance under Tex.R.Civ.P. 120a. The trial court sustained appellee's special appearance and dismissed the lawsuit, holding that appellee was not subject to in personam jurisdiction in a Texas court. We reverse the trial court and hold that to sustain jurisdiction in Texas and require appellee to defend here would not be a denial of due process of law.

Michigan General Corporation is a Delaware corporation which conducts business through numerous subsidiaries in various states. Its principal place of business is in Dallas, Texas. Mod–U–Kraf is incorporated and has its principal place of business in Virginia. It sells modular homes principally in Virginia and West Virginia but has never sold any products in Texas. In 1977, Michigan General Corporation, Mod–U–Kraf, and Michigan General of Virginia, a wholly owned subsidiary of Michigan General Corporation, entered into a merger agreement whereby Michigan General of Virginia would merge into Mod–U–Kraf. Since Michigan General of Virginia was also a Virginia corporation, the proposed merger was to be between two Virginia corporations. Michigan General Corporation was also a party to the merger because each outstanding share of Mod–U–Kraf's common stock was to be converted into .5 shares of Michigan General Corporation's preferred stock. Mod–U–Kraf signed the merger agreement in Virginia, and Michigan General Corporation and Michigan General of Virginia signed it in Dallas. Accord-

ing to the merger agreement, Michigan General Corporation was obligated to prepare a S–14 registration statement to file with the S.E.C. This statement was prepared in Texas but became useless because the merger was aborted by Mod–U–Kraf before its effective date. Michigan General Corporation sued for damages claiming that Mod–U–Kraf wrongfully terminated the merger and, consequently, was liable for expenses incurred by Michigan General Corporation in preparing the merger documents including the S.E.C. registration statement.

, Michigan General Corporation argues that jurisdiction may be acquired over Mod–U–Kraf under Tex.Rev.Civ.Stat.Ann. art. 2031b, §§ 3–4 (Vernon 1964), which read as follows:

> 3. Any foreign corporation . . . that engages in business in this State . . . and does not maintain a place of regular business in this State or a designated agent upon whom service may be made *upon causes of action arising out of such business done in this State,* the act or acts of engaging in such business within this State shall be deemed equivalent to an appointment by such foreign corporation . . . of the Secretary of State of Texas as agent upon whom service of process may be made . . . . .

> 4. For the purpose of this Act . . . *any foreign corporation . . . shall be deemed doing business in this State by entering into a contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State* . . . . . [Emphasis added.]

Mod–U–Kraf contends, however, that it is not within the literal grasp of article 2031b because it was not doing business in Texas. We cannot agree. Mod–U–Kraf signed the merger agreement with a resident of Texas and that contract was to be partly performed in Texas. Thus, Mod–U–Kraf was doing business in Texas within the ambit of the longarm statute. *Pizza Inn, Inc. v.*

*Lumar,* 513 S.W.2d 251, 254 (Tex.Civ.App.— Eastland 1974, writ ref'd n. r. e.). Although Mod–U–Kraf is amenable to service of process under article 2031b, this does not necessarily mean that assertion of jurisdiction over it comports with due process. *Gubitosi v. Buddy Schoellkopf Products, Inc.,* 545 S.W.2d 528, 535 (Tex.Civ.App.—Tyler 1976, no writ).

Since the reach of article 2031b is limited only by the Fourteenth Amendment to the United States Constitution, our primary question is whether due process would be violated if jurisdiction is asserted over Mod–U–Kraf. The starting point for analyzing issues concerning longarm statutes and due process is *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945), which held:

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain *minimum contacts with it such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.* [Emphasis added.]

The due process test in *International Shoe* was further explained in *Hanson v. Denckla,* 357 U.S. 235, 253–254, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283, 1298 (1958) as follows:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with *the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus involving the benefits and protections of its laws.* [Emphasis added.]

The Texas Supreme Court in *U–Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760, 763 (Tex.1977), *cert. denied,* 434 U.S. 1063 (1978) applied the principles of *International Shoe* and *Hanson v. Denckla,* and held that an Oklahoma resident could not be

required to defend in Texas since his only contact with Texas consisted of executing a contract in Oklahoma which stipulated that payments were to be made in Texas and his subsequent remittance of several payments. Although the Texas Supreme Court utilized two tests in *U–Anchor* in analyzing whether a court may exercise jurisdiction over a nonresident defendant, it recognized that each case must turn on its own facts because of the vagueness of the constitutional standard. *U–Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760 (Tex.1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978).

The two general tests used by the supreme court in *U–Anchor* are set forth in *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 494 (5th Cir. 1974), and *O'Brien v. Lanpar Co.,* 399 S.W.2d 340, 342 (Tex.1966). The *Cousteau* test requires that: (1) there must be some minimum contact with the state which results from an affirmative act of the defendant; and (2) it must be fair and reasonable to require defendant to come into the state and defend the action. The *O'Brien* test requires that: (1) the nonresident defendant must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with such act or transaction;[1] and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. It is undisputed that representatives of Mod–U–Kraf came to Texas to discuss the merger agreement, they later signed that agreement, and Michigan General Corporation is suing Mod–U–Kraf for its alleged breach of that agreement. Thus, the first prong of the *Cousteau* test and the first two prongs of the *O'Brien* test have been met. This case, therefore, must be analyzed under the last

element under both the *Cousteau* and *O'Brien* tests, i. e., whether requiring Mod–U–Kraf to defend in Texas would offend traditional notions of fair play and substantial justice.

Michigan General Corporation argues that it would not offend traditional notions of fair play to assert jurisdiction over Mod–U–Kraf because of the nature and extent of Mod–U–Kraf's contacts with Texas. Mod–U–Kraf's contacts with Texas stem solely from the merger transaction and include the following: telephone discussions concerning the merger occurred between Mod–U–Kraf's officers in Virginia and Michigan General Corporation's officers in Dallas; Mod–U–Kraf's officers and its attorney travelled to Dallas from Virginia on more than one occasion to discuss the merger; and Mod–U–Kraf's officers were present in Dallas when officers of Michigan General Corporation signed the merger agreement. Michigan General Corporation points out that the closing of the merger and the exchange of Michigan General Corporation's preferred stock for Mod–U–Kraf's common stock were to take place in Dallas. Michigan General Corporation also notes that in preparing the S.E.C. registration statement, all drafting, printing, legal, and accounting activities and expenses were incurred in Dallas and that these expenses are the basis of this suit. In essence, Michigan General Corporation stresses that Mod–U–Kraf entered into a contract that had substantial economic relationships with the State of Texas and that Mod–U–Kraf was physically present in Texas on several occasions.

Mod–U–Kraf, on the other hand, argues that it is unfair and unreasonable to require it to defend in Texas. Mod–U–Kraf emphasizes that its activities in Texas were limited to attending a few negotiating sessions regarding the merger agreement which had absolutely no relation to Texas other than the home office of Michigan General Corporation, the parent corporation

---

1. *See generally* Comment, *The Texas Long-Arm Statute, Article 2031b: A New Process Is Due,* 30 S.W.L.J. 747, 760 (1976); Note, 15 Hous.L.Rev. 1054, 1071 (1978).

of Michigan General of Virginia, happened to be in Texas. Mod–U–Kraf contends that its contacts with Texas were minimal, and it had no expectation or intention of invoking the benefits and protections of Texas law by mere negotiation of a merger agreement in Texas. Mod–U–Kraf stresses that the merger was between two Virginia corporations, and the parties had specifically chosen Virginia substantive law to control the execution, construction, and performance of the merger agreement. Although both merging companies were Virginia corporations, we note that Michigan General Corporation was also a party to the merger since it signed the merger agreement and thereby obligated itself to perform duties in Texas. Mod–U–Kraf bolsters its argument that it would be unfair to require it to defend in Texas since Mod–U–Kraf has never sold any products in Texas, owns no property in Texas, maintains no agents or banking accounts in Texas, and has never earned any money from business done in Texas. Mod–U–Kraf emphasizes that if the merger had taken place, its business would not have changed in any respect; the only difference would be that Mod–U–Kraf would have been controlled by Michigan General Corporation. A Mod–U–Kraf officer testified that Michigan General Corporation initiated the merger negotiations and that Mod–U–Kraf representatives journeyed to Dallas from Virginia approximately three times with one of the trips being at the request of Michigan General Corporation. Mod–U–Kraf also points out that the merger was not to become final until Mod–U–Kraf's shareholders approved the plan of merger and appropriate filings were made with Virginia authorities.

We hold that under these circumstances it would not offend traditional notions of fair play and substantial justice to require Mod–U–Kraf to defend in Texas. As stated in *In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 226 (6th Cir. 1972):

> An essential element of such "fairness" in our society has always been that a person is not asked to bear a special burden (such as defending in a foreign forum) *unless he has done something in a pur-*

*poseful manner or with such knowledge as to make his deeds the equivalent of purposeful action.* The Hanson v. Denckla requirement is simply designed to avoid the situation where the "unilateral activity" of the plaintiff can drag an unsuspecting and unwilling defendant into a foreign forum. [Emphasis added.]

Here, the facts show that Mod–U–Kraf knowingly did purposeful acts in Texas with a Texas resident, i. e., Mod–U–Kraf actively negotiated the merger agreement in Texas with Michigan General Corporation. Mod–U–Kraf, therefore, cannot claim that the only activity in the forum was the unilateral activity of the plaintiff, nor can Mod–U–Kraf claim that it is an unsuspecting defendant similar to the defendants in *Hanson v. Denckla* and *U–Anchor Advertising, Inc. v. Burt.* Mod–U–Kraf's contacts with Texas through its negotiations and ultimate contract with Michigan General Corporation were apparently designed to produce a benefit from a business transaction undertaken in this state. Obviously, Mod–U–Kraf must have believed that it would derive substantial economic benefit from its excursions to Texas. Thus, Mod–U–Kraf's contacts with Texas were by no means minimal or fortuitous, but instead, were active and purposeful. In view of Mod–U–Kraf's purposeful contacts with Texas, it is not unfair to require it to defend in Texas. *See Liquid Carriers Corp. v. American Marine Corp.,* 375 F.2d 951, 956 (2nd Cir. 1967); *National Gas Appliance Corp. v. AB Electrolux,* 270 F.2d 472, 475 (7th Cir. 1959), *cert. denied,* 361 U.S. 959, 80 S.Ct. 584, 4 L.Ed.2d 542 (1960). *Cf. Dennett v. First Continental Investment Corp.,* 559 S.W.2d 384 (Tex.Civ.App.—Dallas 1977, no writ) (negotiations concerning contract occurred in Texas but jurisdiction not asserted under article 2031b because contract not consummated in Texas and no part of contract performable in Texas).

Mod–U–Kraf's physical presence in Texas on three separate occasions should have alerted it to the possibility that Michigan General Corporation would seek the protections and benefits of Texas law. Even

though the merger agreement provided that Virginia substantive law would control its interpretation, this does not mean that the parties had no expectation of invoking the jurisdiction of Texas courts, particularly in light of the parties' physical contacts with this state. As the court stated in *In-Flight Devices Corp. v. Van Dusen Air, Inc.:* "the nature of the direct physical contacts between defendant and plaintiff may be useful in a close case as a gauge of the significance the parties attach to the events occurring in the forum state and thus of their expectations." 466 F.2d at 235.

Our holding is supported by *Thompson v. Ecological Science Corp.,* 421 F.2d 467, 470 (8th Cir. 1970). In that case, the out-of-state party over which jurisdiction was sought, conducted a two-day negotiating conference in Arkansas and made several minor telephone calls to Arkansas to complete the agreement. Although the initial draft of the parties' agreement was prepared in Arkansas, the contract was executed in Florida. In holding that due process was satisfied in maintaining jurisdiction over the nonresident in Arkansas, that court focused on the fact that the claim for relief related directly to the activities conducted in Arkansas. The court noted that a nonresident's contact with the forum state becomes constitutionally significant when it gives rise to the claim involved in the lawsuit, and the forum state has a special interest in protecting the rights of its citizens under a contract negotiated in the forum state. 421 F.2d at 470. Here, of course, not only did negotiations take place in Texas but the contract was finalized in Texas. The very cause of action asserted in our case, recovery of the registration expenses, arose out of Mod–U–Kraf's contacts with Texas. Moreover, Mod–U–Kraf knew that Michigan General Corporation would incur these expenses in Texas.

In summary, Mod–U–Kraf's purposeful relationship with this state through its dealings with Michigan General Corporation make it fair and reasonable for a Texas court to assert jurisdiction over it. Accordingly, the judgment of the trial court sustaining the special appearance is reversed and this cause is remanded for trial on the merits.