**FIDELITY UNION LIFE INSURANCE CO., Appellant,**

v.

**Walter S. ORR, Appellee.**

**No. 05–82–00007–CV.**

Court of Appeals of Texas, Dallas.

March 16, 1983.

Vera R. Bangs, Dallas, for appellant.

Calvin B. Almquist, Dallas, for appellee.

Before GUITTARD, C.J., and STOREY and VANCE, JJ.

GUITTARD, Chief Justice.

In this suit by an insurance company against its non-resident agent, the controlling question is whether the evidence at the special appearance hearing supports the trial court's finding that the agent had insufficient contacts with Texas to be amenable to process under the Texas long-arm statute, Tex.Rev.Civ.Stat.Ann. art. 2031b (Vernon 1964). We conclude that the undisputed evidence at the special appearance hearing establishes that the agent's contacts with Texas were sufficient to render him amenable to Texas process. Accordingly, we reverse the trial court's order of dismissal and remand the case for trial.

The suit was brought by the company in Texas for a balance due on the agent's ledger account for moneys advanced and other items. The agency contract, which was signed by the agent in his home state of Illinois, appoints him as the company's representative for the purpose of soliciting applications for insurance, delivering policies, and collecting and remitting the first premiums on such policies. The contract requires the agent to pay to the company at its home office in Dallas, Texas, all sums due to the company, including repayment of cash advances made to the agent. A supplement to the contract provides that all of the agent's obligations and duties to the company are performable in Dallas County, Texas. The supplement authorizes the agent to accept in partial payment of premiums promissory notes payable to the company at Dallas and guaranteed by the agent and provides that the company shall maintain out of 25% of the commissions due to the agent an escrow account of $5,000 in Dallas to cover defaults in these premium notes.

Shortly after signing the contract, the agent came to Dallas and attended a six-day school conducted by the company concerning its procedures in selling life insurance. He moved his home from Illinois to Madison, Wisconsin, where he worked under the company's general agent residing there. He solicited applications for insurance in Wisconsin from residents of Wisconsin and elsewhere, and sent the applications and premium payments to the home office in Dallas. He also accepted from the applicants at least thirty-one promissory notes payable to the company in Dallas, endorsed his personal guaranty on these notes, and sent them in to the Dallas Office.[1]

---

1. The agent testified that when he wrote a policy on an individual, he sent it to the home office, although the record does not explain why policies were sent to the company rather than delivered to the insured.

The nature of the debt sued on, whether for advances to the agent or for balances due on notes guaranteed by the agent, is not specified in the petition, which alleges only that a balance of $10,733.79 is due from the agent on the company's "agent ledger account," which, according to the contract, is "sufficient prima facie evidence of the accounts between the parties."

The trial judge filed an elaborate memorandum, which he subsequently adopted as findings of fact and conclusions of law in response to the company's request for findings and conclusions. In this memorandum the court undertook to analyze the facts in relation to the test of "traditional notions of fair play, substantial justice . . . and the basic equities of the situation," recognized by the Supreme Court of Texas in *O'Brien v. Lanpar Co.,* 399 S.W.2d 340, 342 (Tex. 1966), and held that due process was not satisfied.

On this appeal the company complains that the judge based his decision on various assumptions concerning the company's business that are not supported by the record. The agent contends that even if these unsupported assumptions be disregarded, the undisputed evidence is sufficient to support the judge's conclusion that assertion of personal jurisdiction by the Texas court would violate due process by offending traditional notions of fair play and substantial justice. He argues that the nationwide scope of the company's business may be inferred from the addresses of the persons attending the training school with him in Dallas, as shown by the roster of those persons in evidence, and further suggests that evidence that he worked under a general agent residing in Madison, Wisconsin, indicates extensive business done by the company in that state. He concedes that his activities constituted "doing business" in Texas as that term is defined by article 2031b, but he insists that the trial court properly considered the relative convenience of the parties in concluding that the requirements of due process were not satisfied. This result, he asserts, is supported by the third prong of the test set out in *O'Brien* and approved in *U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977) as follows:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

We do not agree. In *U-Anchor* the Supreme Court emphasized that the defendant in that case "was a passive customer of a Texas corporation who neither sought, initiated, nor profited from his single and fortuitous contact with Texas." The present case is quite different. Here the agent was an integral part of an insurance marketing enterprise based in Texas. He was required to devote his full working time to the company's business and to send all policy applications to the company's home office in Dallas. His regular method of doing business, as contemplated by the contract, was to obtain from policyholders promissory notes payable to the company in Dallas, to personally guarantee these notes, and send them in to the Dallas office. He attended a school for agents in Dallas, and presumably all his activities in Wisconsin were pursuant to the instructions he received at the school. He expressly obligated himself to make payments in Dallas of whatever sums might be owing by him to the company. In short, his contract established a substantial economic relationship with the state of Texas comparable to that of the nonresident defendant in *Michigan General Corp. v. Mod-U-Kraf Homes, Inc.,* 582 S.W.2d 594, 596 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r. e.).

 We cannot give controlling weight here to the "relative convenience of the

parties" because this factor must be weighed along with other items. Inconvenience of the forum is not in itself a constitutional obstacle if the requirements of due process are otherwise satisfied. *Zeisler v. Zeisler*, 553 S.W.2d 927, 931 (Tex.Civ.App.—Dallas 1977, writ dism'd). There is no showing that witnesses are available in Wisconsin that would not be available in Texas. The relative financial strength of the parties, on which the trial judge seems to have based his ruling, provides no justifiable basis for disparate application of general principles of law. In the light of these circumstances we conclude that "traditional notions of fair play and substantial justice" would not be offended by the court's assumption of jurisdiction over the person of defendant. Accordingly, we hold that the court erred in dismissing the suit.

Reversed and remanded.