STATE V. HIPP 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-91-053-CV





STATE OF TEXAS,




 APPELLANT


vs.





SHIRRELL D. HIPP, ET UX., ET AL.,



 APPELLEES


 




FROM COUNTY COURT AT LAW NUMBER ONE OF TRAVIS COUNTY, TEXAS


NO. 1791, HONORABLE J. DAVID PHILLIPS, JUDGE 



 




NO. 3-91-215-CV





STATE OF TEXAS,




 APPELLANT


vs.





C. MILTON DOWD, ET UX.,



 APPELLEES


 




FROM COUNTY COURT AT LAW NUMBER THREE OF TRAVIS COUNTY, TEXAS


NO. 1718, HONORABLE MICHAEL SCHLESS, JUDGE



 




 These are condemnation cases. In separate causes, the State of Texas, appellant,
acting by and through the State Highway and Public Transportation Commission, brought
condemnation proceedings against Shirrell D. Hipp, et al., and C. Milton Dowd, et al.
(collectively, "the landowners"), appellees, to acquire property for a highway project. Both cases
were tried to a jury, and in each cause the jury failed to find that the State negotiated with the
landowners in good faith for the purchase of the properties before bringing the condemnation
actions. Following the return of the jury's verdict, the trial court in each case dismissed the
State's condemnation suit and awarded attorney's fees to the landowners. The State has perfected
an appeal in each cause. We will reverse the trial court's dismissal of cause number 3-91-053-CV
(the "Hipp case") and render judgment in accordance with the jury finding as to the value of the
property being taken by the State; we will affirm the judgment of the trial court in cause number
3-91-215-CV (the "Dowd case").


BACKGROUND


 Both cases arise out of the State's efforts to acquire property necessary for the
completion of two major highway projects. The Hipp case involved the taking of a whole
property for the purpose of widening Ben White Boulevard in Austin. The Dowd case involved
the taking of an 836-square-foot strip of land along the front of a 14,546-square-foot parcel for
the purpose of widening and elevating U.S. Highway 183 in Austin. In each case, the Texas
Department of Highways and Public Transportation (the "Highway Department") hired an
independent professional appraiser to determine the value of the property to be taken. Once the
independent appraisal was completed, a right-of-way appraiser employed by the Highway
Department reviewed the appraisal. Based on the independent appraisal, the right-of-way
appraiser then made a recommendation to the central Right-of-Way Division for the State. The
Right-of-Way Division then reviewed the work of the independent appraiser and the right-of-way
appraiser and made a final determination as to the amount of compensation to be offered the
landowners for their property.

 In each case, after the Right-of-Way Division had approved the compensation
figure, a right-of-way agent employed by the Highway Department communicated the offer to the
landowners. The landowners rejected the offers, whereupon the State instituted condemnation
proceedings. In each proceeding the trial court appointed three Special Commissioners, who held
a hearing and made an award of compensation to the landowners. In neither case did the
landowners attend the Special Commissioners' hearing; and in both cases the landowners filed
objections to the award of the Special Commissioners and a verified plea to the jurisdiction in the
trial court.

 In the trial of each case, three questions were submitted to the jury for their
determination: (1) whether the State negotiated in good faith in an attempt to purchase the
landowners' property before filing suit; (2) what amount of money would be necessary to
compensate the landowners for the taking; and (3) what amount of reasonable and necessary
attorney's fees and expenses had been incurred by the landowners. In both cases, the jury failed
to find that the State had engaged in good-faith negotiations with the landowners before bringing
suit. The trial court then dismissed both suits on that basis, awarding attorney's fees to the
landowners. The State has appealed both cases to this Court, arguing that the evidence shows
conclusively that it negotiated in good faith with the landowners before bringing suit.


LAW APPLICABLE TO BOTH CASES


1. Statutory Requirement

 The Texas Property Code provides as follows:

 (a) If . . . this state . . . wants to acquire real property for public
use but is unable to agree with the owner of the property on the amount of
damages, the condemning entity may begin a condemnation proceeding by filing
a petition in the proper court.


 (b) The petition must:


 (1) describe the property to be condemned;


 (2) state the purpose for which the entity intends to use the
property;


 (3) state the name of the owner of the property if the owner
is known; and


 (4) state that the entity and the property owner are unable
to agree on the damages.

Tex. Prop. Code Ann. § 21.012(a), (b) (1984) (emphasis added). The State has the burden of
pleading and proving that before initiating the condemnation proceeding it was "unable to agree"
with the landowner as to the amount of damages that would result from the taking of the
landowner's property; absent such pleading and proof, the trial court lacks jurisdiction to entertain
the proceeding or grant the requested relief. See City of Houston v. Derby, 215 S.W.2d 690, 692
(Tex. Civ. App. 1948, writ ref'd); City of Austin v. Hall, 446 S.W.2d 330, 336 (Tex. Civ. App.
1969), rev'd on other grounds, 450 S.W.2d 836 (Tex. 1970); Isaac v. City of Houston, 60 S.W.2d
543, 545-46 (Tex. Civ. App. 1933, writ dism'd).

2. Question for Judge or Jury?

 Before we analyze the State's legal-sufficiency points, we address a threshold
question: Should the judge or the jury decide whether the condemnor has met the unable-to-agree
prerequisite to bringing a condemnation proceeding? The appellees assert that if there is a factual
dispute on the issue, it is for the jury to determine. We disagree. For the reasons set out below,
we conclude that the question is one for the judge, even if questions of fact exist.

 As discussed above, if the condemnor fails to plead and prove that it was unable
to agree with the landowner before bringing the condemnation action, the trial court must dismiss
the suit for lack of jurisdiction. If we accept appellees' argument that a factual dispute as to the
fulfillment of this statutory prerequisite is a question for the jury, an entire eminent-domain
proceeding would be void and the case dismissed if, at the conclusion of the trial, the jury found
that the condemnor had failed to satisfy the unable-to-agree requirement. In fact, that is what
happened in each of the present cases; after a complete jury trial on all aspects of the
condemnation proceedings (including the compensation due the landowners), the trial court
dismissed the suit for lack of jurisdiction based on a failure to find that the State satisfied the
unable-to-agree requirement. Such a process obviously results in an enormous waste of time and
money for all parties involved, including the judicial system. The purpose of requiring the
condemnor to plead and prove that it made a bona fide effort to agree is to prevent needless
litigation. City of Nueces v. Rankin, 303 S.W.2d 455, 457 (Tex. Civ. App. 1957, no writ). A
process that permitted a complete jury trial simply to determine if the trial court had jurisdiction
over the cause would frustrate that purpose.

 We conclude that the trial judge should determine as a threshold matter whether
the condemnor has satisfied the unable-to-agree prerequisite to bringing suit. Such a process
comports with the general rule that the determination of jurisdiction is made by the court, not the
jury. See Graham v. Graham, 733 S.W.2d 374, 377 (Tex. App. 1987, writ ref'd n.r.e.);
Ainsworth v. Oil City Brass Works, 271 S.W.2d 754, 760 (Tex. Civ. App. 1954, no writ). A
matter of first consideration by any court is the determination of its own jurisdiction. Barnes v.
Bituminous Casualty Corp., 495 S.W.2d 5, 9 (Tex. Civ. App. 1973, writ ref'd n.r.e.). 
Moreover, a court has the power to determine any facts on which its jurisdiction depends. See
generally 21 C.J.S. Courts § 88 (1990); see also Texas & Pac. Ry. v. Gulf, Colo., & S. F. Ry.,
270 U.S. 266, 274 (1926); Mike Hooks, Inc. v. Pena, 313 F.2d 696, 700 (5th Cir. 1963). Indeed,
Texas courts must often resolve factual issues in making jurisdictional determinations. For
example, when an issue of jurisdiction over the person exists, the parties present evidence to the
trial court, and the trial court makes both factual and legal determinations as to the existence of
in personam jurisdiction. See Tex. R. Civ. P. 120a; see also Fidelity Union Life Ins. Co. v. Orr,
648 S.W.2d 36 (Tex. App. 1983, no writ). Thus, our conclusion that the judge, not the jury,
should decide whether the condemnor has satisfied the statutory requirement comports with
traditional Texas practice as to the determination of jurisdictional matters.

 The landowners rely on Rankin, 303 S.W.2d 455, for the proposition that the jury
may decide whether the condemnor has met the unable-to-agree requirement. Such reliance is
misplaced. The issues presented in Rankin concerned the sufficiency of the evidence to support
the jury's verdict. Rankin does not address the question of whether the judge or the jury should
decide the unable-to-agree issue. To the extent Rankin can be read to stand for the proposition
that the issue may be submitted to the jury whenever a fact question exists, we decline to follow
it.

 Finally, we note that in other jurisdictions the trial judge determines the unable-to-agree issue as a threshold matter before commencing the trial on the merits of the condemnation
suit to determine just compensation due. See, e.g., Moody's Inc. v. State, 267 N.W.2d 192, 193
(Neb. 1978); State v. Bair, 365 P.2d 216, 217-19 (Idaho 1961); County Bd. of School Trustees
v. Boram, 186 N.E.2d 275, 277 (Ill. 1962); State Highway & Transp. Comm'n v. Herndon, 302
S.E.2d 55, 57-58 (Va. 1983); Weir v. Kebe, 503 N.E.2d 177, 180-81 (Ohio Ct. App. 1985).

 In sum, we hold that once the condemnee raises the question of whether the
condemnor has satisfied the unable-to-agree requirement, (1) the parties should present evidence to
the trial judge on the issue; and, even if issues of fact exist, the trial judge should resolve such
issues. Cf. Anderson v. Clajon Gas Co., 677 S.W.2d 702, 706 (Tex. App. 1984, no writ) (fact
issues controlling determination of court's jurisdiction may be decided by trial court in context
of a plea in abatement). If the trial court determines that the condemnor has failed to carry its
burden of proof on the issue, it should dismiss the condemnation proceedings; otherwise, the suit
should proceed to trial on the merits. The trial court's determination on the jurisdiction issue is,
of course, subject to appellate review at the conclusion of the trial on the merits.

 In the present cases the trial court submitted the unable-to-agree issue to the jury,
and the jury failed to find the issue in the State's favor. There is nothing in the record, however,
to indicate that the trial court felt bound by the jury's verdict on this issue. Accordingly, because
the trial court dismissed both suits for lack of jurisdiction, we presume that the court came to the
same conclusion as the jury and made an implied "non-finding" to that effect. In any event, the
appellate standard for reviewing such non-findings is the same whether they were made by the
trial court or the jury.

3. Satisfaction of the Unable-to-Agree Requirement

 The condemnor has the initial burden of proof on the unable-to-agree issue. In
order to prevail on its legal-sufficiency point of error, therefore, the State must show, first, that
the record contains no evidence affirmatively supporting a negative finding on the issue, and,
second, that the contrary proposition is established as a matter of law. See Sterner v. Marathon
Oil Co., 767 S.W.2d 686, 690 (Tex. 1989).

 Therefore, we begin our analysis by searching the record for evidence that
affirmatively supports the non-finding, i.e., for evidence tending to show that the State failed to
meet the unable-to-agree requirement. In both the Dowd and Hipp cases, there is no dispute that
the State made only one offer of compensation to the landowners before bringing suit, and that
the landowners rejected the offer in each case. The landowners assert generally that the State's
practice of making only one offer of compensation is insufficient to satisfy the unable-to-agree
requirement. They argue that in order to satisfy the requirement, the State must engage in
"negotiations" with the landowner, i.e., the State must "bargain" with the landowner, presumably
by engaging in a series of offers and counteroffers. We disagree.

 Texas courts have made it clear that, to satisfy the unable-to-agree requirement, the
condemnor must do more than merely state that the parties are unable to agree; rather, the
evidence must show that before bringing the condemnation proceeding the condemnor made a
bona fide attempt to agree with the landowner on the amount of compensation due as a result of
the taking. See Brinton v. Houston Lighting & Power Co., 175 S.W.2d 707, 710 (Tex. Civ. App.
1943, writ ref'd w.o.m.).

 What constitutes a "bona fide attempt to agree"? We agree with the following
language used by one Texas court:


 With reference to an effort to reach an agreement, 2 Lewis, Eminent Domain
(3d Ed.) 896, says: "The attempt need not be prosecuted further than to develop
the fact that an agreement is impossible. The inability to agree required by the
statute does not mean an inability to buy at any price, but only at a price which the
condemning party is willing to pay."


 In 20 C.J. 895, § 318, it is said: "However, all that is required is that there
shall be a bona fide attempt to agree with the owner, and that there shall be an
honest disagreement between the parties as to the compensation which the one is
willing to give and the other is willing to receive. A formal offer and refusal is not
necessary. Nor is it necessary that there should be a series of offers or prolonged
negotiations in order to agree on compensation; an effort to agree is all that is
required; and it is sufficient if the negotiations proceed far enough to indicate that
an agreement is impossible. If it is apparent that an effort to agree would be
unavailing and an offer useless, none need be made. The statute does not
contemplate an impossibility to purchase at any price, however large, but merely
an unwillingness on the part of the owner to sell at all, or a willingness on his part
to sell only at a price which in petitioner's judgment is excessive. . . ."


W.T. Waggoner Estate v. Townsend, 24 S.W.2d 83, 85 (Tex. Civ. App. 1929, no writ); see also
Houston North Shore Ry. Co. v. Tyrrell, 98 S.W.2d 786, 795-96 (Tex. 1936) (futile effort not
required); Curfman v. State, 240 S.W.2d 482, 484 (Tex. Civ. App. 1951, writ ref'd n.r.e.) (bona
fide effort sufficient); Cook v. Ochiltree County, 64 S.W.2d 1018, 1020 (Tex. Civ. App. 1933,
no writ) (bona fide attempt required).

 This seems to be the general rule in other jurisdictions as well:


The courts have demonstrated reluctance to require extensive negotiations with
landowners, and have frequently cited the maxim that negotiations need only
proceed to a point where it is clear that the landowner is unwilling to sell at a price
which the condemnor is willing to pay. Thus, the courts have generally held that
the requirement of a good-faith effort to purchase property is satisfied, and
condemnation proceedings may be instituted, once the landowner has refused an
offer by the condemnor . . ., failed to respond to an offer by the condemnor . . .,
or demanded a higher price than that offered by the condemnor . . . .


Annotation, Sufficiency of Condemnor's Negotiations Required as Preliminary to Taking in
Eminent Domain, 21 A.L.R.4th 765, 774 (1983).

 We conclude that the Texas statute does not demand prolonged negotiations or a
series of offers and counteroffers between the parties. Instead, the statutory prerequisite may be
satisfied if the condemnor makes a single bona fide offer to a landowner that the condemnor in
good faith feels is the amount of compensation due, and the landowner rejects that offer. See
Pete-Rae Dev. Co. v. State, 353 S.W.2d 324, 325 (Tex. Civ. App. 1962, writ ref'd n.r.e.);
Schlottman v. Wharton County, 259 S.W.2d 325, 330-31 (Tex. Civ. App. 1953, writ dism'd);
Curfman, 240 S.W.2d at 484. (2) Therefore, we hold that the fact that the State made but a single
offer of compensation to the landowners before bringing suit does not, in and of itself, provide
any evidence to support a negative finding on the unable-to-agree requirement.

 The landowners also point to evidence that the State's agent who actually made the
offer of compensation to them was without authority to vary the amount of the offer. In light of
our holding that prolonged discussions and a series of offers and counteroffers are not required
to satisfy the statute, we conclude that evidence of a lack of authority to vary the initial offer is
irrelevant to the condemnor's good faith. The landowners in the present case do not dispute that
the State's agent had authority to make the initial offer, and that is all that is required as long as
such offer itself is made in good faith.

 There is also undisputed evidence that before bringing the condemnation
proceeding, the State refused to allow the landowners to see the appraisal on which the State based
its offer of compensation. The landowners cite no authority for the proposition that the State is
required to divulge the basis of its offer. The pertinent question is whether the condemnor's offer
was one made in good faith, not whether the condemnor divulged the basis of its offer so that the
landowner might be able to bargain more effectively with the condemnor. As stated above, the
condemnor has no duty to compromise its offer as long as it is a bona fide one. Thus, we
conclude that the State's failure to divulge the basis of its offer does not constitute evidence
supporting the non-finding as to the State's satisfaction of the unable-to-agree requirement.

 To this point in our discussion, the arguments made in both the Dowd case and the
Hipp case have been identical. Because the particular facts of the two cases produce different
results on appeal, we will now discuss the cases separately.



THE DOWD CASE


 In points of error one through four of the Dowd case, the State asserts that the
evidence shows conclusively that it made a bona fide attempt to agree with the Dowd appellees
on the purchase of the relevant portion of their tract before initiating condemnation proceedings. 
In points of error five through eight, the State raises several complaints regarding the admission
of certain evidence, the trial court's refusal to submit certain jury instructions, and the sufficiency
of the evidence to support the jury's finding as to damages.

 As discussed above, while a single offer by the condemnor may satisfy the unable-to-agree requirement, the offer made must be a bona fide offer. In order to be bona fide, the offer
must be made "[i]n or with good faith; honestly, openly, and sincerely; without deceit or fraud." 
Black's Law Dictionary 160 (5th ed. 1979); see also State Bd. of Ins. v. Professional & Business
Men's Ins. Co., 359 S.W.2d 312, 322-23 (Tex. Civ. App. 1962, writ ref'd n.r.e.). In the context
of eminent domain proceedings, the offer must not be arbitrary and capricious; rather, it must be
based on a reasonably thorough investigation and honest assessment of the amount of just
compensation due the landowner as a result of the taking. See Lapsley v. State, 405 S.W.2d 406,
411 (Tex. Civ. App. 1966, writ ref'd n.r.e.).

 In the Dowd case, the State sought to acquire an 836-square-foot strip of land along
the front of a 14,546-square-foot commercial tract owned by the Dowd appellees. Since it was
a partial-taking case, one of the issues to be determined was what amount of compensation was
due the landowners as damages to the "remainder" of their property, i.e., that portion not being
taken by the State. The appraisal relied on by the State, however, included "0" damages to the
remainder, notwithstanding the appraiser's admissions that the value of the remainder would be
reduced by such factors as decreased accessibility, visibility, and traffic count. At trial, when
asked why he did not include this diminution in value to the remainder in his appraisal, the
appraiser testified that the Highway Department and the Attorney General's Office had instructed
him not to consider a diminution in value to the remainder resulting from any factors that also
negatively affected other landowners abutting the project, because such damages were considered
noncompensable "community damages."

 We recognize that the law in Texas on the issue of damages to the remainder in a
partial-taking case is far from clear. Indeed, if this case involved merely a difference of opinion
as to the proper interpretation of the law of community damages, we would be hard pressed to
find any evidence of bad faith. But that is not the case here. The Highway Department's
instruction that the appraiser exclude from his appraisal any diminution in value that resulted from
"shared" or "community" factors was in direct contravention of the Department's own guidelines
and policies. The Highway Department's "Appraisal and Review Manual" provides as follows:


 [T]he law is clear that the fact that every single tract of land along a highway
may be damaged or enhanced but [sic] not prevent such damage or enhancement
from being specific with regard to each and every one of such tracts.


 This theory is perhaps best stated in the following from a court opinion: "The
fact that adjoining or neighboring property is damaged in the same way would not
prevent a recovery. Neither would the fact that adjoining or neighboring property
receive similar benefits render it improper to consider such benefits.


 Particular property of appellees sustains special damages by cutting down of
the street, lowering the grade upon which it abutted would be [sic] entitled to
recover, notwithstanding every other lot on the street was affected in the same
manner."


There was direct evidence that the manual represents the policy of the Highway Department.

 We conclude that the evidence that the Highway Department instructed its
"independent" appraiser to disregard the Department's own written policies and guidelines in
arriving at his appraisal value supports an inference that the Department failed to make a bona fide
offer that it in good faith believed to be the amount of compensation due. Such an inference
constitutes more than a scintilla of evidence to support the failure to find that the State made a
bona fide attempt to agree with Dowd on the purchase of his tract before it initiated condemnation
proceedings. Accordingly, we overrule the State's points of error one through four in the Dowd
case. In light of this holding that the trial court lacked jurisdiction, we need not address points
of error five through eight, which complain of alleged errors that occurred during trial.


THE HIPP CASE


 In four points of error, the State asserts in the Hipp case that the evidence shows
conclusively that it made a bona fide attempt to agree with the Hipp appellees on a purchase of
their tract before initiating condemnation proceedings. In response, the landowners' primary
jurisdictional argument is that the appraiser should have valued their property as commercial
property instead of residential property (which would have resulted in a significant increase in the
value of the property), and that this failure constitutes sufficient evidence to support the non-finding as to the State's bona fide attempt to agree.

 The State sought to acquire an entire parcel of property owned by the Hipp
appellees for the purpose of widening Ben White Boulevard. As in the Dowd case, the Highway
Department hired an independent appraiser to determine the amount of compensation due the
landowners as a result of the taking. After the appraisal was reviewed and approved by the
Department's right-of-way appraiser and the state Right-of-Way Division, the Highway
Department made an offer to the landowners based on that appraisal. The landowners rejected
the offer.

 According to the State's own witnesses, when determining the amount of
compensation due the landowner, the State must value the property to be taken at its "highest and
best use," i.e., the most profitable use to the landowner that would be legally and physically
possible within the foreseeable future. In making his appraisal of the Hipp appellees' tract, the
Highway Department's independent appraiser determined that although the property could
reasonably be used physically as commercial property, it was not reasonably probable that in the
foreseeable future the property could legally be used as commercial property. He therefore valued
the property based on its current residential zoning.

 In support of their argument that the offer based on residential zoning was not a
bona fide offer, the landowners point to evidence that most, if not all, of the other properties in
the area bordering Ben White Boulevard are zoned commercial. While this evidence supports an
inference that this property is suited physically for commercial property, such evidence, by itself,
has no relevance to the legal uses to which the property could be put in the foreseeable future. 
Even more to the point, such evidence did not raise an inference that the State did not honestly
believe that the property would not likely be zoned commercial in the foreseeable future. There
are many factors to be considered in zoning property other than the zoning of the surrounding
property. The demarcation between commercial zoning and residential zoning always has to fall
somewhere. We conclude that this evidence, by itself, offers no support for the negative finding
on the unable-to-agree requirement.

 Appellees also point to certain memos between the Highway Department and the
City of Austin and intra-departmental memos of the City of Austin as evidence of a conspiracy
to depress the value of the land along Ben White Boulevard that the State would have to acquire
for the highway project. The appellees first point to a series of memos dated February 20, 1986,
from the Highway Department's district right-of-way director to the City of Austin's Public
Works Department. In those memos, the right-of-way director requests that the City of Austin
not issue development permits that would allow encroachment of improvements into the future
right of way along Ben White Boulevard. The landowners argue that this is evidence of bad faith
on the part of the State. We disagree. The State's request related to the issuance of building
permits, not zoning. It is hardly bad faith for the State to request that property owners not be
allowed to construct buildings or other improvements when it is known that in the near future
those improvements will have to be destroyed at taxpayers' expense. It would be a waste of
money and time for both the State and the landowners. Accordingly, such a request reflects
prudence, not an attempt to artificially suppress land values.

 The landowners also point to certain inter-departmental memos of the City of
Austin dated April 1985 and April 1986. In these memos, one department in the City of Austin
requested another City department to deny any "intensification of zoning" (which would include
changing the zoning from residential to commercial) on properties along Ben White Boulevard that
the State would have to acquire for the purpose of the highway improvement project. Again we
conclude that this evidence does not tend to show a lack of good faith on the part of the State. 
Even if we assume that it would be bad faith to deny rezoning on properties designated to be
acquired for a highway project, there is no evidence that the Highway Department itself ever
requested such action. The memos in question were not from the Highway Department; rather,
they were between departments of the City of Austin. There is absolutely no evidence linking the
State to a "conspiracy" to suppress land values by manipulating City of Austin zoning procedures. 
Accordingly, the memos do not tend to show a lack of good faith by the State in valuing the tract. 
We conclude that the record contains no evidence affirmatively supporting the negative finding
on the unable-to-agree requirement.

 Having reached the foregoing conclusion, we must now determine whether the State
has shown as a matter of law that it satisfied the unable-to-agree requirement. After examining
the entire record, we conclude that it did. There is no dispute that the State made an offer of
compensation to the landowners, who rejected that offer. The critical question, therefore, is
whether the State's offer was a bona fide one; and in that context, the only real dispute is whether
the property should have been valued as residential or commercial property.

 The record shows that the independent appraiser used by the Highway Department
in this case based his decision to characterize the property as residential on the following facts:
(1) the property was currently zoned residential; (2) the zoning history of the property showed that
two earlier applications to rezone the property as commercial had been unanimously denied by the
City of Austin before the current highway project was announced; (3) other residential-property
owners in the neighborhood vigorously opposed having the property rezoned; and (4) although
the rear of appellees' property abutted Ben White Boulevard, the front of the property was on a
residential street. The appraiser's uncontradicted testimony was clear, direct, and positive, and
was internally devoid of inconsistencies and contradictions; in short, we believe it is sufficient,
in combination with the other evidence in the case, to prove the issue conclusively. See Collora
v. Navarro, 574 S.W.2d 65, 69 (Tex. 1978). We conclude, therefore, that the record
demonstrates as a matter of law that the State made a bona fide offer of compensation to the Hipp
appellees, which they rejected; thus, the State has conclusively shown that it satisfied the unable-to-agree requirement. Accordingly, we sustain the State's points of error one through four in the
Hipp case.


CONCLUSION


 Based on the foregoing discussion, we conclude that in the Dowd case there is
sufficient evidence to support the failure to find that the State made a bona fide attempt to agree
with the Dowd appellees before bringing suit. Therefore, in cause number 3-91-215-CV we
affirm the judgment of the trial court dismissing that suit and granting reasonable attorney's fees
to the Dowd appellees. We conclude, however, that in the Hipp case the State has conclusively
shown that it made a bona fide attempt to agree with the Hipp appellees before bringing suit. 
Therefore, in cause number 3-91-053-CV we reverse the judgment of the trial court dismissing
the suit and awarding reasonable attorney's fees; we render judgment that the Hipp appellees be
awarded $288,500 in accordance with the jury's finding on the fair market value of their property
taken by the State, and that title to the Hipp tract, as described in the Award of Commissioners
dated May 2, 1990, and filed in the court below, be vested in the State of Texas.



 

 J. Woodfin Jones, Justice

[Before Chief Justice Carroll, Justices Jones and B. A. Smith]

Affirmed as to Cause Number 3-91-215-CV; AND

Reversed and Rendered as to Cause Number 3-91-053-CV

Filed: May 6, 1992

[Publish]
1. The condemnee must raise the issue by filing a verified plea to the jurisdiction. See
Austin Home Center Assoc. v. State, 794 S.W.2d 593, 594 (Tex. App. 1990, no writ).
2. We recognize that some courts have talked in terms of "negotiations." See, e.g., City of
Houston v. Plantation Land Co., 440 S.W.2d 691, 693-94 (Tex. Civ. App. 1969, writ ref'd
n.r.e.); Lapsley v. State, 405 S.W.2d 406, 411 (Tex. Civ. App. 1966, writ ref'd n.r.e.). The
term "negotiation" may be misleading, however. While the term "negotiation," in its broadest
sense, encompasses the making of a single offer by the condemnor and the rejection of that
offer by the condemnee, the term also conjures up images of prolonged discussions and
counteroffers that we do not believe are necessary to satisfy the unable-to-agree requirement. 
For that reason, we have opted for the phrase "bona fide attempt to agree."